689 P.2d 472 (1984)
K.T.E., Appellant,
v.
STATE of Alaska, Appellee.
No. S-50.
Supreme Court of Alaska.
September 28, 1984.
*473 Salvatore Iacopelli, Terri-Lynn Coleman, Coleman & Iacopelli, Fairbanks, for appellant.
D. Rebecca Snow, Asst. Atty. Gen., Fairbanks, Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.
Mary E. Greene, Asst. Public Defender, Fairbanks, Dana Fabe, Public Defender, Anchorage, guardian ad litem.
Before BURKE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and MOORE, JJ.

*474 OPINION
MATTHEWS, Justice.
This is an appeal from the superior court where the parental rights of a mother (referred to in this appeal as "K.T.E.") were terminated. K.T.E. argues that the superior court improperly placed the burden of proof on her, rather than the State, and thus violated her statutory and due process rights. K.T.E. also argues that the superior court erred in allowing the State to prevent K.T.E. from visiting her daughter (hereafter "S.R.T.") before an order of parental termination had been issued. We affirm.
The Department of Health and Social Services, Division of Family and Youth Services (hereafter "the Division") initially took custody of S.R.T. from K.T.E. and her husband on September 24, 1981, after several dramatic instances of parental neglect. The Division then filed a petition for adjudication of child in need of aid under AS 47.10.010(a)(2)(A) and (C) which was heard in December, 1981. At that time, K.T.E. had been diagnosed as psychotic. After the adjudication trial, the court found, by clear and convincing evidence, that S.R.T. was a child in need of aid as a result of her parents' conduct, and placed S.R.T. in the custody of the Division for a period not to exceed two years. The court explained that natural parents have a preference in their favor,[1] but stated:
[I]t is my intention that if the parents are not able to prove they're able to take care of these children  and it's going to be up to them  not up to the Department to disprove it, up to them to prove it, I think that their  their termination of their parental rights is something that both of you can look forward to, again, not because either one of you are bad people, but because this child has a right to form some solid emotional ties and to identify with a father and mother, natural or adopted, within a very short period of time.
A regular schedule of weekly visitation was established following the adjudication. These visits began with short supervised visits in the Division office and were eventually increased to day long visits. Once the longer visits began, however, S.R.T. began to exhibit unusual behavior. First, she woke up screaming hysterically, balled up in a corner of her crib. Then she had episodes of explosive diarrhea, began to look dazed and preoccupied, acted angry with the foster parents, testing them by trying dangerous things she had been warned about, and refused to let the foster mother go out of her sight. This behavior appeared in various combinations shortly after each visit and gradually disappeared before the next visit. The behavior did not occur when S.R.T. was left with other adults.
On August 5, 1982, a hearing was held during which the parties entered into an oral stipulation providing for continuing legal custody of S.R.T. in the Division, counseling and parenting classes for the natural parents, and increasing visitation until full physical custody of S.R.T. could be returned to the natural parents. The guardian ad litem noted that there was some hesitation on his part due to the fact that there was some evidence that S.R.T. was not responding well to the parental visits.
On October 6, 1982, S.R.T.'s father, while S.R.T. was present, lost his temper with his social worker, a Mr. Cain, and threatened to kill him. The day after that visit S.R.T. began banging her head on the floor and other hard objects. She also developed eczema and slept for up to eighteen hours a day. In response the Division cancelled parental visits and on November 19 filed a petition for termination of parental rights. Three short supervised visits were allowed between November 24 and December 8, 1982 to allow the guardian ad litem a chance to have the parent-child interaction observed.
A hearing on the petition for termination of parental rights was held from December *475 16, 1982 to January 6, 1983. At the conclusion of this first termination hearing, the court found that S.R.T. was still a child in need of aid due to her parents' conduct, but because of their efforts to change in the interim, they should be given more time to make the necessary adjustments to allow S.R.T. to return safely to their care. In denying the petition for termination at that time, the court noted that the parents had tried to meet the demands placed on them for the return of S.R.T. The court ordered continuing counseling and encouraged visitation between S.R.T. and her parents, but continued custody in the Division and set a time for final decision on the termination petition for six months.
After the first termination hearing, visitation between S.R.T. and K.T.E. resumed.[2] It began with short supervised visits followed by longer visits at the parents' home until the end of March. Although S.R.T.'s symptoms had ceased following the cessation of visits prior to the first termination hearing, she began to exhibit distressing and self-destructive behavior again after the visits recommenced. K.T.E. and the Division agreed to hold a group evaluation which would allow all involved therapists to observe and evaluate the same interactions before and after a multiday visit. This occurred in late March with only a Dr. Trawick attending all three sessions. Based on her recommendation, concurred in by another doctor who had become independently alarmed at changes he observed in S.R.T., the Division on April 1, 1983, cancelled further visits and petitioned again for the termination of parental rights.
On April 5, 1983, the guardian ad litem for S.R.T. filed a motion to compel visitation. After a hearing on the motion held on April 18, the superior court, noting that there had been extensive emotional harm done to S.R.T., left discretion in the Division regarding continued visitation.
The second termination hearing took six days, ending July 5, 1983. The court concluded that K.T.E.'s demeanor during the termination hearing was substantially the same as it had been in the first hearing in 1981. More particularly, the court found that K.T.E. had continued to demonstrate her inability to provide for S.R.T.'s mental and emotional care and that her conduct was unlikely to change. The court therefore terminated her parental rights.[3] Written findings were entered on July 13, 1983, and K.T.E.'s timely appeal followed.

I. DID THE SUPERIOR COURT IMPROPERLY SHIFT THE BURDEN OF PROOF TO THE PARENTS?
AS 47.10.080 provides that in order to terminate parental rights, a court must find by clear and convincing evidence (1) that there is a child in need of aid under AS 47.10.010(a)(2)[4] as a result of parental conduct, and (2) that the parental conduct is likely to continue. Nada A. v. State, 660 P.2d 436, 440 (Alaska 1983); E.A. v. State, 623 P.2d 1210, 1212-13 (Alaska 1981). AS 47.10.080(c)(3), which provides for the clear and convincing proof standard[5], does not specifically place the burden of proof on *476 either party. This court, however, has assigned the burden to the Division. See In re D.C., 596 P.2d 22, 23 (Alaska 1979); see also Matter of S.D., Jr., 549 P.2d 1190, 1200 (Alaska 1976) (in cases other than termination of parental rights, placing the burden of proof on either party is inappropriate).
All parties to this appeal agree that the Division carries the burden of proving its allegations by clear and convincing evidence.[6] K.T.E. argues that certain statements by the superior court indicate that it placed the burden of proof on the parents. The most explicit such language occurred in an exchange between the court and the assistant attorney general at the hearing on the motion to compel visitation held on April 18, 1983:
THE COURT: Who do you envision has the burden of proof in this next proceeding [i.e., the termination hearing]?
A.G.: We do.
THE COURT: That isn't the way I look at it. That isn't what I said in the last two proceedings ... I think Ms. Coleman [K.T.E.'s counsel], apparently, agrees with you. I specifically said last time, and I specifically said the first time, that the burden of proof is going to be on [K.T.E. and her husband], not the State. They've already established, in my estimation, beyond any question, that they're entitled to termination. This interim period between the original finding and the present time was to determine the  it would give the parents an opportunity to determine whether  or to demonstrate that they could take care of this child and meet the emotional and physical needs of the child ... I do not envision it as upon the State. Not that it makes any difference... . That's what I said both times, that the parents are going to have to show that they're able to take care of this child and meet the physical needs of the child and provide for the best interests of the child.
.....
But I'm not going to change either the position I've taken twice before with reference to what this proceeding is going to be.
We conclude that any confusion resulting from the trial court's statements constituted, at most, harmless error.
K.T.E. has not cited as to any remarks made by the trial court at the second termination hearing which indicated that any burden of proof was placed on the parents. Indeed, the court's remarks, both in closing the hearing terminating visitation and in the second termination hearing, indicate that the court understood that the Division had the ultimate burden of presenting the evidence necessary to terminate parental rights.[7] Further, the trial court in statements *477 to the parents indicated that a child's natural parents were given a preference and that what it wished to establish was that the parents were making an honest effort with a reasonable probability of success.
Moreover, the superior court's written findings following the second termination hearing clearly indicate that the court found by clear and convincing evidence that S.R.T. was a child in need of aid as a result of parental conduct and that the parental conduct was likely to continue. Generally, where inconsistencies exist between a court's written findings and its oral statements, the written findings control. Nada A., 660 P.2d at 439 n. 2; Ronne v. Ronne, 568 P.2d 1021, 1023 n. 5 (Alaska 1977).[8]
Given these reasons, we find no evidence that K.T.E. was prejudiced by the trial court's pronouncements.

II. DID THE SUPERIOR COURT ERR BY GIVING THE DIVISION DISCRETION TO DISCONTINUE VISITATION BY K.T.E.?
When the Division filed its second petition for termination of parental rights on April 1, 1983, it discontinued all visitation by K.T.E. with S.R.T. The guardian ad litem filed a motion to compel visitation several days later. K.T.E. entered a non-opposition to this motion. At an evidentiary hearing held on April 18, K.T.E. called a witness and cross-examined the Division's witnesses. At the conclusion of the hearing, the court found that there had been extensive emotional harm suffered by S.R.T. The court noted that there was a difference of opinion among the experts as to whether the parents were the cause of S.R.T.'s extreme reaction to visitation, but found the advocates of visitation to be less credible than those who had testified as to the detrimental impact of visits on S.R.T. Accordingly, the court left discretion in the Division regarding visitation.
K.T.E. argues that the failure of the Division and the superior court to allow her visitation rights was in violation of AS 47.10.084(c). AS 47.10.084(c) provides in relevant part:[9]
When there has been transfer of legal custody or appointment of a guardian and parental rights have not been terminated by court decree, the parents shall have residual rights and responsibilities. These residual rights and responsibilities of the parent include, but are not limited to, the right and responsibility of reasonable visitation, ...
In the present case we conclude that K.T.E.'s right to reasonable visitation under section .084(c) was not violated. The phrase "reasonable visitation" does not imply an absolute right to visitation. Section .084(c) should be read in conjunction with the rest of the chapter to allow parental visits to be barred when the visits are not in the best interests of the child.[10] *478 There was substantial testimony presented that visitation was harming the child and the trial court found that this testimony was more credible than conflicting testimony. Further, K.T.E.'s ability to gather evidence for the second termination hearing does not seem to have been substantially impaired since K.T.E.'s experts had an adequate opportunity to observe the child.
AS 47.10.084 grants the parents a substantive right to reasonable visitation. We believe, however, the statute also requires that procedures adequate to protect this substantive right be followed when parental visitation is barred. K.T.E. argues that the State did not provide adequate procedural protections in the present case. We disagree.
Given the lack of guidelines in this area, we set forth the following procedures which should be followed when visitation rights are denied prior to the termination of parental rights. First, we believe that the Division should have primary authority to set visitation based on the best interests of the child. The Division is in the best position to make this decision in the first instance. It might well be impractical to schedule a hearing before damage to the child's emotional or physical well-being has occurred. Second, either the guardian ad litem or the parents should be entitled to request an expedited evidentiary hearing of a denial of visitation. Such a review would consist of an independent determination by the superior court that clear and convincing evidence showed that the child's best interests were served by disallowing parental visitations.[11] We believe that these procedures,[12] which were substantially followed by the superior court in this case,[13] allow the Division to protect the best interests of the child, while at the same time allow courts to prevent any abuses of the Division's authority and protect the parents' rights.[14]
The decision below is AFFIRMED.
NOTES
[1] This "preference" is statutorily expressed in AS 47.10.080(c)(3) which provides that parental rights may only be terminated upon a showing by clear and convincing evidence.
[2] S.R.T.'s father had become physically violent with K.T.E. in February and had left the State.
[3] The parental rights of S.R.T.'s father were also terminated, however he has not appealed that decision.
[4] This section provides that a child may be adjudicated in need of aid as a result of, inter alia, physical abandonment or neglect on the part of the parents.
[5] This provision provides:

c. If the court finds that the child is in need of aid, it shall...
(3) by order, upon a showing in the adjudication by clear and convincing evidence that there is a child in need of aid under AS 47.10.010(a)(2) as a result of parental conduct and upon a showing in the disposition by clear and convincing evidence that the parental conduct is likely to continue to exist if there is no termination of parental rights, terminate parental rights and responsibilities of one or both parents and commit the child to the department or to a legally appointed guardian of the person of the child, and the department or guardian shall report annually to the court on efforts being made to find a permanent placement for the child.
[6] This standard is required by federal due process as well as state law. See Santosky v. Kramer, 455 U.S. 745, 769, 102 S.Ct. 1388, 1402, 71 L.Ed.2d 599, 617 (1982).
[7] The trial court stated in its closing remarks at the hearing terminating visitation rights:

At the second hearing [first termination hearing] again, the State proceeded with the burden, and I said at that time, after that hearing was over, that after this hearing [second termination hearing] there would either be a return of those children or a termination of parental rights would be ordered, and that the burden would be upon the State to show this relationship that everybody keeps talking about in posibilities. The State has demonstrated before, that these certain things occurred after these visitations. It was suggested at that hearing that there are other explanations for this. And the Court is going to be concerned with medical testimony to a reasonable medical probability and not possibilities. Anything is possible.
(Emphasis added). The court stated the following in the second termination hearing:
I was very impressed with [K.T.E.] ... when she appeared in the December hearing. Her attitude in Court, her attitude toward others, her answering of the questions that were put to her suggested to me that there was substantial improvement.
Had it not been for the very unfortunate problem with [S.R.T.] that appeared after the visits, I would have been able to accept without question [the parents' counselor's] analysis of what should happen. And I would have probably disregarded the testimony of [the pediatrician] and Dr... . Trawick. I probably would have given the benefit of the doubt .. . and would have been unable to say by clear and convincing evidence that parental rights should be terminated.
That's not the case now. Without hesitation I'll terminate parental rights of both [the father and K.T.E.].
(Emphasis added).
[8] We stated in City of Anchorage v. Steward, 374 P.2d 737, 739 (Alaska 1962), that if the written order is so contradictory to the oral decision "that its usefulness is impaired," a new trial may be ordered if it appears that the trial judge's initial decision was based on an erroneous view of the law. However, given the reasons discussed above, we do not believe that this course is necessary in the present case.
[9] This section has not been directly addressed by this court, however we faced a similar fact situation in Nada A. v. State. In that case a mother was denied contact with her daughter because the Division had decided to seek termination of the mother's parental rights. 660 P.2d at 438. We referred to the Division's decision in a footnote as a "sound desire to avoid disruptive contacts while a judicial resolution of the matter was pending." Id. at 440 n. 4. The mother's challenge to the Division's actions was apparently based on the Division's obligation imposed by AS 47.05.060 to make reasonable attempts, whenever possible, to preserve and strengthen the family ties, rather than section .084(c). Nada A., 660 P.2d at 440 n. 4, citing E.A. v. State, 623 P.2d at 1213.
[10] See, e.g., AS 47.10.080; .082; .084; .100. See also, e.g., In Interest of Ingold, 4 Kan. App.2d 692, 610 P.2d 130 (1980) (order barring parental visits based on detriment to the minor upheld).
[11] We believe the clear and convincing evidence standard is more appropriate than the preponderance of the evidence standard where, as here, parental visitation is being completely denied rather than only limited. See In re Pablo C., 108 Misc.2d 842, 439 N.Y.S.2d 229 (Fam.Ct. 1980); In re Rhine, 310 Pa.Super. 275, 456 A.2d 608 (1983); M. Garrison, Why Terminate Parental Rights?, 35 Stan.L.Rev. 423, 486-88 n. 284, 495 (1983).
[12] The decision of the superior court is, of course, reviewable by this court based on an abuse of discretion standard.
[13] The superior court did not specify what standard of proof it applied in terminating K.T.E.'s visitation rights. We conclude, however, that any error in this regard was harmless. As noted above, K.T.E.'s position at the second termination hearing was not substantially prejudiced since her experts had an adequate opportunity to observe the child. Further, K.T.E.'s parental rights were terminated only three months after visitation was stopped.
[14] K.T.E. also argues that the procedures afforded her were constitutionally inadequate under the due process clause. However, this constitutional issue is not properly presented since K.T.E. did not raise the issue before the superior court. See Jeffries v. Glacier State Telephone Co., 604 P.2d 4, 11 (Alaska 1979). In any case, we find that the procedures outlined above are constitutionally adequate.