v.

**STATE of Alaska, Respondent.**

**In the Matter of K.H., C.H., and J.H., Minor Children Under the Age of Eighteen Years.**

No. S–1451.

Supreme Court of Alaska.

Aug. 29, 1986.

Raymond Funk, Asst. Public Defender, Fairbanks, Dana Fabe, Public Defender, Anchorage, for petitioner.

D. Rebecca Snow, Asst. Atty. Gen., Fairbanks, Harold M. Brown, Atty. Gen., Juneau, for respondent.

Daniel L. Callahan, Schendel & Callahan, Fairbanks, for Navajo Nation.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

OPINION

COMPTON, Justice.

### I. INTRODUCTION

This case concerns the appropriate standard of review for state decisions which essentially terminate a natural parent's right of reasonable visitation under AS 47.-10.084(c). The Department of Health and Social Services (the state) decided to allow

D.H.'s minor children, who had been adjudicated as children in need of aid, to move from Alaska to Alabama with their foster care family. The trial court reviewed the state's decision and determined that a preponderance of the evidence showed that the move was in the children's best interests. We conclude that the trial court applied an incorrect burden of proof. Therefore, we reverse and remand.

## II. FACTUAL AND PROCEDURAL BACKGROUND

K.H. (5 years old), C.H. (3 years old) and J.H. (2 years old), are the minor children of D.H. and R.H., who are no longer married. R.H. is a Navajo Indian and is no longer living in Alaska.[1]

In March 1984 the state took temporary custody of the children based on a voluntary placement agreement with the parents. A few months later, the children were adjudicated as children in need of aid.

The parents and state stipulated that the state could retain custody for one year. In February 1985 the state filed a petition for termination of parental rights which was held in abeyance due to the parents' efforts to resolve the problems which led to the children's removal.

In September 1985 the parents stipulated to an extension of the state's custody of the children for a period not to exceed two years. The court ordered an extension of custody based upon this stipulation. The stipulation provided a plan for either or both parents to gain legal and physical custody of the children if they became able to provide an appropriate, stable and safe home for the children.

After entering the stipulation, D.H. visited the children once a month. Since 1986, D.H. increased his visits to once a week for a period of several weeks.[2] In December 1985 the father of the foster family, who is in the United States Army, was notified that he was being transferred from Fairbanks, Alaska to Dothan, Alabama. A month later, the state notified D.H. that it was going to resubmit its petition to terminate parental rights, and meanwhile allow the foster parents to continue their custody of the three children, which included moving them to Alabama. The state has not yet filed a new petition nor has a trial date been set on the original petition.

D.H. filed a motion to review the state's decision to allow the children to move to Alabama. After a hearing was held in late February 1986, the superior court denied D.H.'s motion, concluding that "the continued placement of the minor children with the current foster family is in the best interests of the children and is not contrary to any applicable provision of law." The court recognized that D.H. showed significant progress in his current rehabilitation efforts and that the state's decision would substantially impair his visitation rights. Additionally, it stated that the decision would be reviewed periodically to assess the likelihood of placement with the father.

D.H. petitioned this court for an emergency stay and review. The state opposed both.[3] This court granted D.H.'s petition.[4]

## III. DISCUSSION

### A. STANDARD OF REVIEW

AS 47.10.084(c) provides in pertinent part:

1. There is a fourth younger child who was in child care for a period of time. D.H. regained custody of her in December 1985. It does not appear that she was ever in the custody of the state or in the foster family with the other three children.

2. The state claims D.H. visited the children four times in 1984, seven times in 1985 and telephoned them 19 times in 1985.

3. Counsel for the mother appeared in the trial court but took no position. There is no pleading from the guardian *ad litem*.

4. The petition for review was filed on March 7, 1986 and granted April 3, 1986 over the state's opposition. Oral argument was heard in Fairbanks April 21, 1986 and a summary order of reversal and remand was entered the next day. Chief Justice Rabinowitz and Justice Matthews dissented in each instance.

(c) When there has been transfer of legal custody or appointment of a guardian and parental rights have not been terminated by court decree, the parents shall have residual rights and responsibilities. These residual rights and responsibilities of the parent include, but are not limited to, the right and responsibility of reasonable visitation....

D.H. argues that the state's decision to let the children move with their foster family to Alabama constitutes a de facto termination, not a mere limitation, of his .084(c) right of "reasonable visitation." He contends that the standard of review adopted in *K.T.E. v. State*, 689 P.2d 472 (Alaska 1984) applies since, like *K.T.E.*, this case involves a decision to terminate parental visitation prior to termination of parental rights.

Under *K.T.E.*, the superior court independently determines whether the state has proved by clear and convincing evidence that termination of parental visitation is in the child's best interest. 689 P.2d at 478.

The state argues that the abuse of discretion standard applies since it is making a placement decision pursuant to AS 47.10.080(c)(1) rather than a decision terminating D.H.'s right of reasonable visitation under AS 47.10.084(c).[5] It contends that it need only show by a preponderance of the evidence that the placement of the children with their foster family is in the children's best interest. The state alternatively characterizes its decision as merely restricting visitation.

In arguing that it is making a placement decision, the state claims:

The only limitation the State has imposed on visitation in the past and would expect to continue in effect for the foreseeable future is that visitation between Mr. [H] and the children needs to be supervised. Mr. [H] knows where the children's foster home is; he is welcome to call there at any reasonable time and on any reasonable frequency; he has been welcomed by the foster parents to visit in their home on this basis since August 1984. As the evidence will show Mr. [H] has not chosen to exercise the opportunities he has had for visitation with any regularity or appropriate frequency. He has relied heavily on telephone contacts with and about the children and could continue to do so. He could arrange to visit them at their new home if he wanted to.

The proper standard of review for placement decisions is abuse of discretion. *In the Matter of B.L.J.*, 717 P.2d 376, 380–81 (Alaska 1986); *State v. A.C.*, 682 P.2d 1131, 1134 (Alaska App.1984). The superior court can review the state's placement decision to see if it is in the best interests of the minor. *B.L.J.*, 717 P.2d at 380.

The trial court did not directly address the placement argument, rather it construed the guidelines set forth in *K.T.E.* as requiring "an independent review of the [state's] decision and an application of the preponderance of the evidence standard" since parental visitation was being limited rather than denied.

Whether or not this case involves a placement decision, we conclude that the state's action constitutes a de facto termination of D.H.'s visitation rights. First, D.H. is unemployed and virtually penniless. Since the state will not provide air fare to Ala-

---

**5.** AS 47.10.080(c)(1) provides:

(c) If the court finds that the minor is a child in need of aid, it shall

(1) order the minor committed to the department for placement in an appropriate setting for a period of time not to exceed two years or in any event past the date the minor becomes 19 years of age, except that the department may petition for and the court may grant in a hearing (A) two-year extensions of commitment which do not extend beyond the minor's 19th birthday if the extension is in the best interests of the minor and the public; and (B) an additional one-year period of supervision past age 19 if the continued supervision is in the best interests of the person and the person consents to it; the department may transfer the minor, in the minor's best interests, from one placement setting to another, and the minor, the minor's parents or guardian, and the minor's attorney are entitled to reasonable notice of the transfer;

bama he cannot visit the children on a regular basis there. D.H. would be limited to phone "visits" with the children and these visits would further be limited since D.H. lacks the funds to call regularly. Additionally, long-distance phone calls do not fulfill a parent's substantive right of reasonable visitation. Therefore, the state's decision infringes upon and conflicts with a parent's rights provided in AS 47.10.084(c).[6]

Second, the state's decision also conflicts with the stipulation, which included a plan by which D.H. could regain custody of the children if he engaged in various rehabilitative activities. The court's decision undermines this plan as well as D.H.'s efforts to establish and strengthen ties with his children.

The policy behind Chapter 47 is to preserve and strengthen family ties whenever possible. AS 47.05.060. Other states have construed similar child welfare provisions and expressed the policy as one "to facilitate, whenever possible, the return to their natural families of children." *In the Matter of Pablo C.*, 108 Misc.2d 842, 439 N.Y. S.2d 229, 231 (Fam.Ct.1980). *See also In the Interest of Rhine*, 310 Pa.Super. 275, 456 A.2d 608, 613 (1983). A substantial impairment which amounts to termination of the parental rights of reasonable visitation does not comport with the policy of preserving family ties. *See Id.*, 456 A.2d at 613 (allowance of visitation comports with the Act's express purpose of preserving the family).

A termination of visitation rights exists not only where the state formally obtains a termination order but also where the state's decision as a practical matter precludes the parent from exercising his or her right of reasonable visitation. We do not focus on the fact that the state has not

expressly denied D.H.'s visitation rights since to do so would elevate form over substance.

For these reasons, the standard of review set forth in *K.T.E.* is appropriate in this case since the state's decision here constitutes a de facto termination of D.H.'s right of reasonable visitation. The case must be remanded for the trial court to determine independently whether clear and convincing evidence shows that the children's best interests are served by disallowing parental visitation.[7]

The decision of the superior court is REVERSED and REMANDED for proceedings consistent with this opinion.

RABINOWITZ, Chief Justice, with whom MATTHEWS, Justice, joins dissenting.

I dissent from the majority's holding that the standard of review set forth in *K.T.E. v. State*, 689 P.2d 472 (Alaska 1984) is applicable "since the state's decision here constitutes a de facto termination of D.H.'s right of reasonable visitation."

In response to D.H.'s motion, the superior court concluded that continued placement of the minor children with the current foster family was in their best interests and was not contrary to any applicable provision of law. The superior court, in recognition of the fact that the father's reasonable rights of visitation under AS 47.10.084(c) were being substantially impaired, ordered that its decision regarding foster family placement be reviewed at least every three months. In rejecting D.H.'s contention that the clear and convincing standard adopted in *K.T.E.* controlled, the superior court stated:

In this case, parental visitation is not being completely terminated. However,

---

**6.** We recognize that a parent does not have an absolute right to visitation. *K.T.E.*, 689 P.2d at 477. Here, however, the state's decision deprives D.H. of his right to any visitation.

**7.** The parties dispute whether removal of the children to Alabama comports with the Indian Child Welfare Act (ICWA) 25 U.S.C. § 1915(b) (1983). D.H. argues that the state must show by clear and convincing evidence that the chil-

dren's special needs justify their placement in Alabama, which is not within reasonable proximity of their Fairbanks home. The state argues that the preponderance of the evidence standard applies. Although ICWA applies here, we find it unnecessary to address the ICWA claims due to our resolution of the case under AS 47.10.084(c).

given [D.H.'s] indigent status, it is clear that his visitation rights will be substantially impaired. Given that substantial impairment, the court determines that the applicable procedure is an independent review of the Division's decision and an application of the preponderance of the evidence standard.

In my view, the superior court's choice of the preponderance of the evidence standard was appropriate. As the superior court correctly noted, D.H.'s visitation rights were not terminated, rather they were substantially limited.[1] In such circumstances application of the clear and convincing standard of *K.T.E.* is not required.[2]

---

**1.** The only limitation the state insists upon is that visitation between D.H. and the children be supervised. It is open to D.H. to continue his telephone contacts with the children.

**2.** In the factual context of this case it is my view that D.H. is not entitled to the protection of the Indian Child Welfare Act. Thus it is not necessary to address any 25 U.S.C. § 1915(b) issue.