v.

**STATE of Alaska, Appellee.**

**No. S–3005.**

Supreme Court of Alaska.

Sept. 15, 1989.

Tricia Collins, Juneau, for appellant.

Janine J. Reep, Asst. Atty. Gen., and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Barbara T. Walker, Juneau, Guardian Ad Litem for A.R., A. and D.R.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

This case involves an appeal by A.H., the natural mother of A.R., A., and D.R., from a decision of the superior court affirming the relocation of the three children to a foster home in Anchorage.

### I.

A.R., A., and D.R. are the minor children of A.H. and D.R., Sr. A.H. is a full-blooded Alaska Eskimo and the minor children involved in this proceeding are subject to the requirements of the Indian Child Welfare Act (ICWA), 25 U.S.C. §§ 1901–1963.

A.H. married D.R., Sr. in 1973. In 1978, A.H. and D.R., Sr. were divorced. At that time, the couple's oldest daughter A.R. was four years old, the youngest daughter A. was three years old, and the son D.R. was two years old. D.R., Sr. was awarded legal custody of all three children.

In 1983, A.H. married D.H. A.H. and D.H. adopted one child and had two natural children of their own. The couple also sought to regain custody of A.H.'s children from her prior marriage.

On January 18, 1986, the Department of Family and Youth Services (DFYS) took emergency protective custody of A.R., A., and D.R. because of allegations of sexual abuse of the children by D.R., Sr. The children were removed from their father's home and placed in Anchorage foster homes. A.R. and A. were placed in the "M" foster home in Anchorage. D.R. was placed in another Anchorage foster home.

Social Worker Mary Savage testified that while A.H. immediately sought custody, the State did not return the children to A.H. until a favorable home study was completed. The children were placed with A.H., who then resided in Juneau, in August 1986. The State's plan at the time was to maintain State custody until such time as the divorce decree could be amended to change legal custody to A.H. On November 14, 1986, a stipulation was entered adjudicating the children as Children in Need of Aid on the grounds that the children refused to return to the father's home.

Between the time of the placement of the three children with A.H. in August 1986 and October 1987, when the children were removed from the home, there were readjustment problems for the entire family.

The children remained in A.H.'s home for a period of 14 months while DFYS attempted to provide services to the H.'s to stabilize the family. In the fall of 1987, social worker Lisa Clough, and social work supervisor Jim Shanks, felt that they no longer could guarantee the children's safety in A.H.'s home. Homemaker Marlene Grant reported to DFYS that she believed that there was hitting going on in the home and that she had intervened physically on two occasions. A.'s emotional stability had deteriorated to the point where she was considered a serious suicide risk.[1]

On October 22, 1987, social worker Lisa Clough called a meeting with therapist Billie Lillie; school counselor Ray Malaby; Mark Millard, D.R.'s counselor; and Frank Francisco, a family counselor who had seen the H.'s on two occasions. All participants of the meeting agreed that the children should be removed from the H.'s home.

After the children were removed from her home, A.H. sought review of the placement decision. The placement review was combined with the annual review hearing which began on March 10, 1988. Four days of testimony was presented, and the court also listened to tapes of telephone conversations between the H.'s and the children. These recordings were made by the H.'s without the children's knowledge. On August 17, 1988, the superior court issued its order on annual review. The superior court found: (1) that by a preponderance of the evidence, the children continued to be Children in Need of Aid; (2) that by clear and convincing evidence, the children were likely to suffer physical and emotional damage if left in the custody of their mother; and (3) that DFYS did not abuse its discretion in moving the children to an Anchorage foster home placement.

A.H. appeals.

## II.

### A. Finding that the Minors Continued to Be Children in Need of Aid

In its findings of fact, the trial court discussed the long-term sexual abuse of the children by their father as the basis for the DFYS' original decision to take custody of the children. In its order on annual review, the court found "by a preponderance of the evidence that the minors continue to be children in need of aid, and that active efforts were made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family but that these efforts were unsuccessful."

■ The factual findings supporting the trial court's determination that a minor is a Child in Need of Aid will not be overturned on review unless clearly erroneous. *Cf. D.E.D. v. State*, 704 P.2d 774, 783 (Alaska 1985) (trial court's finding of abandonment under AS 47.10.010(a)(2)(A) reviewed under clearly erroneous standard). The trial court's finding is clearly erroneous where this court is "left with the definite and firm conviction that a mistake has been made." *E.J.S. v. State Dep't of Health & Social Serv.*, 754 P.2d 749, 750 n. 2 (Alaska 1988); *E.A. v. State*, 623 P.2d 1210, 1212 (Alaska 1981).

Alaska Statute 47.10.080(f) provides:

A minor found to be ... a child in need of aid is a ward of the state while committed to the department or the department has the power to supervise the minor's actions. The court shall review an order made under (b) or (c)(1) or (2) of this section annually ... to determine if continued placement ..., as it is being provided, is in the best interest of the minor and the public.

Alaska Statute 47.10.083 requires the following review hearing information:

In the case of a child in need of aid, the child shall be returned home at the review hearing under AS 47.10.080(f) un-

---

**1.** Reports were received from therapist Billie Lillie, counselor Ray Malaby, and a friend of A.'s that A. was talking about suicide.

less the court finds by a preponderance of the evidence that the basis upon which the child was adjudicated under AS 47.-10.010(a)(2) continues to exist. If the child is not returned home, the court shall establish on the record

> (1) why the child was removed from the home;
>
> (2) what services have been provided to or offered to the parents to facilitate reunion;
>
> (3) what services were utilized by the parents to facilitate the reunion;
>
> (4) the visitation history between the parents and the child;
>
> (5) whether additional services are needed to facilitate the return of the child to the child's parents;
>
> (6) when return of the child can be expected.

■ The trial court's findings are in substantial compliance with these statutory requirements. The evidence presented at trial clearly showed that the conditions that led to the children's placement in State custody continue to exist. Their father was in prison for his sexual abuse conviction, and the children were unwilling and unable to live with him. The children continued to suffer from emotional and psychological problems as a result of this abuse. The experts at the trial all testified as to the children's need of an emotionally supportive family situation and professional counselling. We therefore conclude that the trial court's finding that the children remained in need of aid is not clearly erroneous.

A.H. argues that the provisions of AS 47.10.010(a)(2)(D) do not render all children subject to sexual abuse at the hands of one parent Children in Need of Aid when no evidence has been presented that the re-

maining parent knew or acquiesced in the abuse of the children.[2] A.H. contends that the trial court therefore erred in concluding that the children continued to be Children in Need of Aid.

■ The guardian *ad litem* responds[3] that because the father had sole legal custody of the children at the time of the abuse, the children were and continue to be Children in Need of Aid. We agree. The statute provides for the designation of a Child in Need of Aid if the child was sexually abused by a single parent. Under the plain language of the statute, the other parent's acquiescence or fault in allowing the abuse to occur is not required in order to find the child to be in need of aid.

■ In this case, the designation of the minors as children in need of aid acted to cut off the father's sole legal custody; it did not terminate A.H.'s residual parental rights remaining after her divorce from D.R., Sr. *See* AS 47.10.084(c). We therefore conclude that the trial court did not make a legal error in holding that the children continued to be in need of aid under AS 47.10.010(a)(2)(D).

**B. Finding that Return of the Children to A.H.'s Home Would Result in Physical or Emotional Damage to Them**

The Indian Child Welfare Act provides in section 1912(e) that:

> No foster care placement may be ordered ... in the absence of a determination, supported by clear and convincing evidence, including testimony of qualified expert witnesses, that the *continued custody of the child* by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.[4]

---

**2.** AS 47.10.010(a)(2)(D) provides that AS 47.10 governs

> [w]hen the court finds the minor
>
> . . . . .
>
> (2) to be a child in need of aid as a result of
>
> . . . . .
>
> (D) the child having been sexually abused either by the child's parent, guardian or custodian, or as a result of conditions created by the child's parent, guardian or custodian, or

by the failure of the parent, guardian or custodian adequately to supervise the child.

**3.** The State contends that A.H. did not properly raise this legal issue on appeal.

**4.** "Foster care placement" is defined by ICWA as "any action removing an Indian child from its parent or Indian custodian for temporary placement in a foster home ... where the parent or Indian custodian cannot have the child returned

Judge Jahnke found "that clear and convincing evidence, including the testimonies of experts, was presented that proved that the minors were likely to suffer physical and emotional damage if left in the custody of their mother." A.H. contends that this finding is clearly erroneous. She contends that the court's finding that she had a tendency to use "low to moderate levels of force to discipline the children" does not satisfy the required finding of "serious physical damage." The State contends that the court's finding is supported by the evidence.

The superior court found that the emotional needs of the children had not been addressed adequately by the H.'s. A.H. argues that this finding is premised on two erroneous and inconclusive grounds: (1) "poor parenting skills" [5] by the H.'s and (2) an unwillingness to accept assistance and counselling from the professionals and agencies involved.[6]

The State relies on the testimony of DFYS social workers, counsellors, and other experts concerning the children's emotional needs, the problems of fighting, quarreling, and inappropriate discipline in the H. home, and the H.'s inability to meet the children's special needs. In particular, the State points to evidence of the youngest daughter A.'s threats of suicide and D.R.'s deteriorating psychological condition.

■ In light of the above evidence, one is not left with a definite and firm conviction that the court erred in finding that clear and convincing evidence supported the conclusion that leaving the children in the H.'s home would likely result in serious emotional damage.

A.H. also argues that the court's finding that "the minors were likely to suffer physical and emotional damage" does not meet the required finding of *serious* damage. Despite the miswording of the court's findings, the evidence in the record clearly supports a finding of the potential for serious damage. We affirm the superior court on this issue.

**C. The Anchorage Foster Care Placement**

A.H. argues that the DFYS' decision to place the children in the M. foster home in Anchorage constituted a *de facto* termination of A.H.'s parental rights of visitation.[7] A.H. urges that the decision therefore should have been reviewed in the superior court under the clear and convincing evidence standard.

■ As a general rule, the proper standard of review for placement decisions by DFYS is for abuse of discretion. *In re B.L.J.*, 717 P.2d 376, 380–81 (Alaska 1986). However, in *D.H. v. State*, 723 P.2d 1274, 1277 (Alaska 1986), this court held that where the placement decision constitutes a *de facto* termination of parental visitation rights,[8] the trial court must determine independently whether clear and convincing evidence shows that the children's best interests are served by disallowing the parental visitation.

■ The *D.H.* court found that "[a] termination of visitation rights exists ... where the state's decision as a practical

---

upon demand, but where parental rights have not been terminated." 25 U.S.C. § 1903(1)(i). Both parties agree that section 1912(e) applies to this case. We therefore do not reach the question of whether the new foster care placement disrupted A.H.'s "continued custody" of the minor children.

5. A.H. argues that the fact that she and her husband are not "ideal" parents does not justify a finding that their continued care is likely to result in serious emotional harm to the children.

6. A.H. argues that she and her husband were not unwilling to engage in counselling but rather were frustrated by "inconsistent" demands of various social workers.

7. The foster care placement preferences of § 1915(b) of ICWA are not at issue in this case.

8. These visitation rights are contained in AS 47.10.084(c) which provides:

When there has been a transfer of legal custody or appointment of a guardian and parental rights have not been terminated by court decree, the parents shall have residual rights and responsibilities. These residual rights and responsibilities of the parent include, but are not limited to, the right and responsibility of reasonable visitation....

matter precludes the parent from exercising his or her right of reasonable visitation." 723 P.2d at 1277. In *D.H.*, the child was moved from Fairbanks to Alabama. In concluding that the State's decision represented a *de facto* termination of D.H.'s rights of visitation, the court noted:

> First, D.H. is unemployed and virtually penniless. Since the state will not provide air fare to Alabama he cannot visit the children on a regular basis there. D.H. would be limited to phone "visits" with the children and these visits would further be limited since D.H. lacks the funds to call regularly. Additionally, long-distance phone calls do not fulfill a parent's substantive right of reasonable visitation.

723 P.2d at 1176–77. A.H. argues that the State's decision to place the children in the M. foster home in Anchorage is analogous to the one in *D.H.* since she does not have the financial means to travel from Juneau to Anchorage.[9] While the family's financial situation may prohibit visiting the children in Anchorage on a regular basis, we hold that A.H.'s situation does not resemble the extreme facts presented in *D.H.*[10] We therefore conclude that the placement in Anchorage did not constitute a *de facto* termination of A.H.'s rights to reasonable visitation.

 Since the placement decision did not constitute a *de facto* termination of visitation rights, then the issue before us on appeal is whether the trial court's finding that DFYS did not abuse its discretion[11] is clearly erroneous. A.H. argues that the trial court erred in upholding DFYS' decision even under this less stringent standard of review.

We disagree. The trial court specifically considered the H.'s interests in family unification and the children's placement in Juneau near their natural mother. However, the trial court agreed with DFYS' analysis that placement in the Anchorage foster home was in the children's best interest since two of the children had developed an important relationship with the M.'s before their placement in the H.'s home and that the M.'s presented the best hope of meeting the children's unique emotional needs.

We conclude that there is substantial evidence in the record to support DFYS' decision to place the children in the M. foster home. We are not left with a firm conviction that the trial court erred in concluding that DFYS' decision was not an abuse of discretion. We therefore affirm the trial court on this issue.

### D. Refusal to Allow the Children to Testify at the Hearing

A.H. argues that the trial court abused its discretion in not allowing the children to testify regarding their desired placement pursuant to Alaska Child in Need of Aid Rule 3(b).[12] A.H. urged that the court require the children to testify, but in the alternative, requested that the court listen to recorded conversations between the H.'s and the children, that had been taped by D.H. without the children's knowledge.

---

**9.** A.H. is unemployed and earns only $1,000 a year making baskets. Her husband is employed as a helicopter mechanic for the Alaskan National Guard. He has an annual income of $42,000.

**10.** We note that the record reflects that DFYS contemplates establishing regular visitation between A.H. and the children, including a longer period of visitation during the children's summer school recess. We trust that the State will establish a regular visitation schedule to enable eventual family reunification and lessen the hardships involved in the distances between the family members.

**11.** *See In re B.L.J.,* 717 P.2d 376, 380–81. An abuse of discretion is found when the decision by DFYS is arbitrary, capricious, or manifestly

unreasonable. *Cf. Safeco Ins. Co. of Amer. v. Honeywell, Inc.,* 639 P.2d 996, 999 (Alaska 1981) (discretionary determination of the trial court will be reversed "only if it is arbitrary, capricious or manifestly unreasonable").

**12.** Child in Need of Aid Rule 3(b) provides: A child who is not of suitable age to understand or participate in the proceedings need not be present at hearings unless the court so orders. The court may excuse the presence of a child who is of suitable age if attendance would be detrimental to the child. The child or the child's guardian ad litem may waive the child's right to be present at a particular hearing.

■ Rule 3 clearly places this decision in the broad discretion of the trial court. Given the testimony concerning the children's placement preferences, the stress that testifying would have on the children, and the fact that the court listened to the taped conversations, one cannot say that the court's decision was an abuse of discretion. We therefore affirm the trial court's decision not to require the children's testimony.

The judgment of the superior court is therefore AFFIRMED.