v.

**STATE of Alaska, DEPARTMENT OF HEALTH AND SOCIAL SERVICES, DIVISION OF FAMILY AND YOUTH SERVICES, Appellee.**

**No. S–10114.**

Supreme Court of Alaska.

March 15, 2002.

---

Lori M. Bodwell, Fairbanks, for Appellant.

Karla Taylor–Welch, Assistant Attorney General, Fairbanks, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

## OPINION

EASTAUGH, Justice.

## I. INTRODUCTION

R.G. lost custody of her five-year old son E.G. to the State of Alaska on a number of occasions due to her physical problems and as a result of a personality disorder. At first concerns were raised by Alaska's Division of Family and Youth Services (DFYS) about R.G.'s ability to physically prevent E.G. from endangering himself. After offering R.G. a variety of services, DFYS experienced difficulties with R.G., including angry outbursts and an assault on a state social worker. The state petitioned to have R.G.'s parental rights terminated. Relying on a clinical psychologist's report that R.G. suffers from a severe borderline personality disorder and on R.G.'s own testimony, and finding that E.G. was a child in need of aid under AS 47.10.011(11), the superior court terminated R.G.'s parental rights. We affirm because the record contains substantial evidence supporting the superior court's finding that R.G.'s personality disorder prevents her from protecting E.G. from substantial risk of harm.

## II. FACTS AND PROCEEDINGS

R.G. is the mother of E.G., who was born in May 1996.[1] E.G.'s father is thought to be T.T., who died in July 2000, although paternity was never established. R.G. attempted to raise E.G. on her own, but a number of

---

1. R.G.'s parental rights to her four other children have already been terminated in a separate proceeding not before us now.

ailments and confounding circumstances, including R.G.'s difficult childhood, have made this problematic.

R.G. lived with E.G. at a rescue mission in Fairbanks on and off for the first few years of his life. During this time concerns arose as to R.G.'s ability to care for E.G. due to R.G.'s physical ailments—primarily a bad back which made it difficult for her to keep up with E.G. There were reported incidents in which E.G. ran off, and his mother—due either to her immobility or inattention—did not immediately retrieve him, placing his life in danger. On one occasion E.G. ran out into the street at the rescue mission where E.G. was staying with his mother. In another incident E.G. ran out into a cul-de-sac at the Fairbanks Resource Agency, which provided health and other services to R.G.

A number of state and local agencies including DFYS assisted R.G. with her physical ailments. More serious problems developed despite the assistance of these agencies. DFYS first petitioned for temporary custody of E.G. in November 1997 after R.G. had been evicted from her residence and reportedly had not planned for future living accommodations for herself and E.G. The superior court granted the petition, stating that "[u]nder the circumstances of this case, the efforts made to avoid the need for removal of the child from the parental home were reasonable.... Continued placement of the minor in the parental home is contrary to the welfare of the child." E.G. was returned to R.G. at the end of November 1997.[2]

R.G. retained custody of E.G. until April 1999, when DFYS again took emergency custody of E.G. and also petitioned for a child-in-need-of-aid adjudication and temporary custody. The petition cited reasons including R.G.'s continuing debilitating back pain, which made her unable to protect E.G. from physical harm. At the temporary custody hearing in May 1999, Standing Master Kath-

erine Bachelder determined that there was probable cause to find that E.G. was a child in need of aid under AS 47.10.011(1).[3] Master Bachelder subsequently ordered E.G. to be placed in the state's temporary custody for ninety days. The adjudication hearing on E.G.'s child-in-need-of-aid status took place before Superior Court Judge Mary E. Greene in October 1999. Judge Greene made a number of oral findings, and found that E.G. was a child in need of aid under AS 47.10.011(6).[4] The court's written findings questioned R.G.'s capacity and commitment to provide E.G. a safe environment. The court found that in many instances either DFYS or Fairbanks Resource Agency offered services to assist R.G. Sometimes R.G. used these services and other times she ignored or shunned them.

Shortly after the superior court found E.G. to be a child in need of aid, R.G.'s relationship with the state and local agencies deteriorated. During a DFYS supervised visit between R.G. and E.G. in October 1999, R.G. assaulted a DFYS social worker, leaving the social worker with red marks on her face and a bruise on her arm. R.G. participated in anger management and parenting classes. She attended some of these sessions at first, but her attendance deteriorated after her efforts to regain custody of E.G. were unsuccessful. In early 2000 Holly Byrnes, the social worker assigned to R.G.'s case since December 1999, had a discussion with R.G. about her inappropriate conduct during visits with E.G., and particularly her harassment of E.G.'s foster parents. By February 2000 the Fairbanks Resource Agency halted supervised visits at R.G.'s residence after it discovered that there were inappropriate people— some with criminal histories—in the home. In October 2000 R.G. stopped attending the anger management program.

---

2. The superior court granted a brief extension of temporary custody in December 1997 when the electricity was turned off in R.G.'s apartment.

3. AS 47.10.011(1) states, in part, that a court may find a child in need of aid if "a parent or guardian has abandoned the child ... and the other parent is absent."

4. AS 47.10.011(6) states, in part, that a court may find a child in need of aid if "there is a substantial risk that the child will suffer substantial physical harm, as a result of conduct by or conditions created by the child's parent, ... or by the failure of the parent ... to supervise the child adequately."

In addition to the physical ailments that initiated the transfer of E.G.'s custody to the state, clinical evaluations of R.G.'s personality disorder raised concerns about whether she was an effective parent and potentially endangered E.G.'s own mental development. In November 1999 a staff member of R.G.'s anger management program determined that R.G. needed a psychological evaluation before social workers could continue with her case. Dr. Frank Nelson, a clinical psychologist, tested her in August 2000. He strongly questioned R.G.'s ability to overcome a severe personality disorder and noted that R.G.'s problem could put E.G. at substantial risk. In later termination proceedings the superior court found that E.G.'s aggressive behavior may be an early sign that he is developing emotional disturbances similar to R.G.'s.

In September 2000 DFYS filed a petition to terminate R.G.'s parental rights to E.G.; it alleged that E.G. was a child in need of aid under AS 47.10.011(1), (8), (9), and (11). In March 2001 the superior court issued its findings and an order terminating R.G.'s parental rights. The findings recounted many of the occurrences reported above, and placed particular emphasis on Dr. Nelson's findings. The court's termination order concluded that E.G. was a child in need of aid under AS 47.10.011(11).[5]

R.G. appeals.

## III. DISCUSSION

### A. Standard of Review

 This court reviews factual findings supporting the superior court's determination that a minor is a child in need of aid under the clearly erroneous standard.[6] Factual findings are clearly erroneous if a review of the entire record leaves the court "with a definite and firm conviction that a mistake

has been made."[7] Whether the trial court's findings comport with the requirements of the child in need of aid statutes is a question of law that this court reviews de novo.[8]

### B. The Superior Court Did Not Err in Terminating R.G.'s Parental Rights.

 R.G. correctly argues that before a court may terminate parental rights it must find, by clear and convincing evidence, that: (1) the child is in need of aid under AS 47.10.011; and (2) the parent failed to remedy the conduct or conditions that placed the child at a substantial risk of harm within a reasonable time.[9] The court must also find, by a preponderance of the evidence, that the department has made reasonable efforts to provide family support services.[10] R.G. does not dispute the superior court's finding that E.G. was a child in need of aid under AS 47.10.011; nor does she contest the finding that DFYS and other relevant agencies made reasonable efforts to provide family support services. R.G.'s argument hinges on the corrective actions she alleges she took to remedy the conduct and conditions deemed to put E.G. at risk.

R.G. argues that her own testimony as well as the testimony of others supports her assertion that she remedied the concerns of DFYS. Her argument proceeds along three fronts: (1) she remedied her physical ailment such that she can now physically control E.G.; (2) she has stabilized her housing situation; and (3) she has abated her anger through the suggested anger management program. R.G. points to testimony by Kathleen Stenberg, the social worker assigned to the case in October 1999, that suggests R.G. was following the recommended program for improving her physical capabilities. To support her claim of a stable living environment, R.G. cites her own testimony that she has

---

5. AS 47.10.011(11) states that a court may find a child to be in need of aid if, by a preponderance of the evidence, it determines that a "parent ... has a mental illness, serious emotional disturbance, or mental deficiency of a nature and duration that places the child at substantial risk of physical harm or mental injury."

6. *A.H. v. State*, 779 P.2d 1229, 1231 (Alaska 1989).

7. *R.J.M. v. State, Dep't of Health & Soc. Servs.*, 973 P.2d 79, 84 (Alaska 1999) (citation omitted).

8. *Id.*

9. AS 47.10.088(a)(1)(A), (B).

10. AS 47.10.088(a)(2).

"lived in [the same] apartment for 16 months." R.G. also states that she only stopped attending the suggested anger management classes when "hope was lost of her son returning to her care."

The state argues that R.G. ignores the superior court's finding that termination was proper because R.G.'s personality disorder placed E.G. at substantial risk of physical harm or mental injury per AS 47.10.011(11). Indeed, R.G.'s brief does not address this finding by the superior court, and she did not file a reply brief to address the state's discussion of this finding's relevance. As it turns out, R.G.'s emotional disturbance is central to the superior court's termination of parental rights, as the court's explicit finding reveals:

> Dr. Frank Nelson evaluated [R.G.] and provided a written report to the court along with oral testimony. His testimony and report were very compelling. Based upon his testimony the court concludes that [R.G.] has an emotional disturbance or mental illness which has been diagnosed as borderline personality disorder.... The qualities noted by Dr. Nelson, along with [R.G.'s] own stated history of child abuse, and her volatile personality are known to be associated with ineffective and potentially abusive parenting ... [E.G.] is a child in need of aid based on AS 47.10.010(11). [R.G.] has a long-term severe personality disorder, and her conduct that results from that puts [E.G.] at substantial risk of mental injury or physical harm.

On appeal R.G. does not dispute either Dr. Nelson's findings or the superior court's adoption of those findings. R.G. instead argues that there is no evidence in the record to link her anger toward other adults with her ability to care for E.G. Nowhere, however, does R.G. demonstrate that the superior court erred in ordering termination due to her emotional disturbance.

The state does not dispute R.G.'s claims relating to her efforts to control her anger, provide housing, and improve her physical ability to care for E.G. But the state does not have to address these issues to prevail because, as it notes, R.G.'s emotional disturbance was central to the termination order. The superior court found that R.G.'s personality disorder was detrimental to her ability to care properly for E.G., and that "[i]t is not likely that [R.G.] is going to change." [11] R.G. does not dispute this finding. Based on its findings and Dr. Nelson's report regarding R.G.'s personality disorder, the court found that E.G. is a child in need of aid per AS 47.10.011(11).

The superior court also found that DFYS "engaged in reasonable efforts." R.G. does not dispute this finding, either. Indeed, DFYS offered many services to R.G., only some of which she accepted, as part of its reasonable efforts to avoid termination. Further, although R.G. accepted some services, and took steps to correct physical ailments and her anger, she was generally not successful in her efforts. And to the extent that she successfully addressed some of the concerns about her physical ailments, R.G. refers us to no evidence that Dr. Nelson's findings regarding her personality disorder were in error or that would justify a conclusion that the superior court erred in adopting those findings.

In reviewing the superior court's order terminating R.G.'s parental rights, we look for evidence in the record supporting the court's findings and conclusions. The record contains substantial evidence supporting termination under the test set out in AS 47.10.088. The superior court's findings were not clearly erroneous. We affirm the superior court's findings and order.

▮ Finally, because termination was required under AS 47.10.011(11) it was not error for the court to terminate R.G.'s parental rights based on her personality disorder rather than her physical ailment. R.G. argues that each time she attempted to satisfy an agency demand or suggestion, a new, different agency demand emerged. R.G. does not point to a specific instance of this

---

11. As the state correctly notes, mental illness on its own cannot form the basis for termination. *A.H. v. State, Dep't of Health & Soc. Servs.,* 10 P.3d 1156, 1162 (Alaska 2000) (citation omitted).

Where the illness is continuing and is likely to create a substantial risk of harm, however, it can form the basis for a termination order. *Id.* (citation omitted).

occurrence, but the record indicates that much of the early discussion in the proceedings focused on R.G.'s physical ability to chase after E.G. For instance, in the first temporary custody ruling in 1997 the standing master determined that the combination of R.G.'s physical ailments and inattentiveness constituted abandonment under AS 47.10.011(1). In 1999 the superior court analyzed E.G.'s status as a child in need of aid under AS 47.10.011(6), which addresses physical harm. It was not until 2000 that R.G.'s personality disorder became a primary concern, implicating AS 47.10.011(11).

The superior court did not err in terminating R.G.'s parental rights, however, because evidence, including Dr. Nelson's testimony regarding R.G.'s borderline personality disorder, supported termination on the ground E.G. was a child in need of aid under AS 47.10.011(11). Also, there is no indication that R.G. had inadequate notice of this ground for termination or had an inadequate opportunity to oppose the termination on the ground her personality disorder put E.G. at substantial risk of harm.

## IV. CONCLUSION

Because the record contains substantial evidence supporting the superior court's finding that R.G.'s personality disorder prevents her from protecting E.G. from substantial risk of harm, we AFFIRM the superior court's findings and termination order.