922 P.2d 271 (1996)
T.B., Appellant,
v.
STATE of Alaska, Appellee.
No. S-6924.
Supreme Court of Alaska.
September 6, 1996.
*272 John Aschenbrenner, Assistant Public Defender, Kenai, John Salemi, Public Defender, Anchorage, for Appellant.
Dianne Olsen, Assistant Attorney General, Anchorage, Bruce M. Botelho, Attorney General, Juneau, for Appellee.
Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

OPINION
RABINOWITZ, Justice.

I. INTRODUCTION

The superior court determined that R.C., the natural child of T.B., is a child in need of aid under AS 47.10.010(a)(2)(A), (C), and (F), and that it is in the best interests of R.C. for the State to retain custody of him for two years. T.B., R.C.'s mother, who was caring for R.C. until the State interceded, now brings this appeal.

II. FACTS AND PROCEEDINGS

T.B. is R.C.'s mother. A Colorado court terminated her parental rights in 1988, after finding that she had abandoned R.C. and had not complied with a rehabilitation plan. The Colorado court awarded custody first to R.C.'s grandfather, and then to R.C.'s uncle, G.C. Thereafter, G.C. executed two separate powers of attorney giving custody of R.C. to T.B. The first one, executed on December 18, 1990, was entitled "Special Power of Attorney and Grant of Temporary Custody" and was effective "until its revocation by me." The second one, executed on October 13, 1994, contained similar language, but was entitled, "Special Power of Attorney and Grant of Permanent Custody." On December 23, 1990, R.C. arrived in Alaska, and lived with T.B. until May 1993, at which time the State took emergency custody of him.
In November of 1992, T.B. withdrew R.C. from school. She re-enrolled him on January 21, 1993. He missed about six weeks of classes. The previous spring, R.C. had been severely injured when another child kicked him in the testicles. T.B. claims that R.C. was assaulted again in the fall of 1992, which prompted her to withdraw him from school. She attempted to enroll him in a home schooling program, but when her application was denied, she returned R.C. to school.
The State took custody of R.C. on May 18, 1993. On that date T.B. threatened R.C. *273 after he struck a motorcycle with a sword.[1] Specifically, she threatened to "beat your fucking ass" and may also have threatened to kill him. R.C. fled to a neighbor's house, where a fight then ensued between the neighbor and T.B. There were allegations that T.B. was drunk, though T.B. only admitted to having had "a couple of beers" that day.
Following the State's exercise of emergency custody in the wake of the May 18 incident, the State designed a plan which would enable T.B. to resume caring for R.C. The plan called for her to attend regular meetings at Alcoholics Anonymous, complete parenting classes, participate in a psychological evaluation, have regular meetings with R.C., and complete individual and family counseling. However, T.B. did not comply with the treatment plan. The superior court found that she attended only four of six parenting classes, that she visited R.C. only "sporadically," that she did not provide the court with a record of AA meetings, and that she did not undergo counseling. The superior court noted that T.B. claimed that her failure to complete the program set up by the State was caused by the distance between her home and the location of the classes and by her inability to afford cab fare to the location of the classes.
The superior court determined that R.C. is a child in need of aid pursuant to AS 47.10.010(a)(2)(A), (C), and (F).[2] The superior court then awarded custody of R.C. to the Department of Health and Social Services for up to two years and also provided for visitations with T.B.
T.B. appeals the superior court's classification of R.C. as a child in need of aid and also appeals the superior court's dispositional order awarding custody to the Department of Health and Social Services.

III. STANDARD OF REVIEW

A superior court's finding that a child is in need of aid will be overturned if this court is left with the definite and firm conviction that a mistake has been made. In the Matter of A.S.W., 834 P.2d 801, 806 (Alaska 1992). Factual findings supporting the superior court's determination that a minor is a child in need of aid are reviewed under the clearly erroneous standard. A.H. v. State, 779 P.2d 1229, 1231 (Alaska 1989).

IV. DISCUSSION

A. Did the Superior Court Err in Holding that R.C. Is a Child in Need of Aid?

Since the superior court articulated three separate grounds in support of its conclusion that R.C. is a child in need of aid, we address each in turn.

1. Did the superior court err in concluding that R.C. is a child in need of aid pursuant to AS 47.10.010(a)(2)(C)?

In its Memorandum of Decision the superior court found:
1. This Court has jurisdiction of this case for purposes of adjudication and disposition under the provisions of A.S. 47.10.010(a)(2)(C).
2. As a result of actions done by or conditions created by R.C.'s mother, T.B., on *274 May 18, 1993, there was an imminent and substantial risk that R.C. would suffer substantial physical harm. R.C. thwarted the risk of harm by his actions in seeking assistance from Jessica Townsend. Jessica Townsend thwarted the risk of harm to R.C. by her actions in assisting R.C. and in preventing T.B.'s access to R.C. during the incident.
Alaska Statute 47.10.010(a)(2)(C) provides for jurisdiction over a child who is in need of aid as a result of
the child having suffered substantial physical harm or if there is an imminent and substantial risk that the child will suffer such harm as a result of the actions done by or conditions created by the child's parent, guardian, or custodian or the failure of the parent, guardian, or custodian adequately to supervise the child[.]
(Emphasis added).
Our review of the record leads us to the conclusion that sufficient evidentiary support is lacking for the superior court's conclusion that "[a]s a result of actions done by or conditions created by R.C.'s mother, T.B., on May 18, 1993, there was an imminent and substantial risk that R.C. would suffer substantial physical harm" under AS 47.10.010(a)(2)(C). Essentially, after R.C. swung a sword at a motorcycle (or possibly at a person), T.B. yelled at R.C. and threatened him. This may have been an overreaction to the incident. However, this isolated incident, without evidence that T.B. was prone to violence or that T.B. had any history of violence towards R.C., falls short of establishing an imminent and substantial risk that the child will suffer substantial physical harm. See F.T. v. State, 862 P.2d 857 (Alaska 1993) (where the state presented no direct evidence concerning father's alleged physical abuse of son, insufficient evidence existed to support the superior court's adjudication under AS 47.10.010(a)(2)(C)); In the Matter of S.A., 912 P.2d 1235, 1238 (Alaska 1996) ("Likewise, the testimony that [the mother] sometimes disciplines [her children] by yelling at them cannot justify a CINA adjudication under subsection (C).").
We therefore hold that evidence of T.B.'s actions on May 18, 1993 is insufficient to support the superior court's adjudication that R.C. is a child in need of aid under AS 47.10.010(a)(2)(C).

2. Did the superior court err in concluding that R.C. is a child in need of aid pursuant to AS 47.10.010(a)(2)(F)?

The superior court found that R.C. is a child in need of aid under the terms of AS 47.10.010(a)(2)(F). More particularly, in its Memorandum of Decision it stated:
The Court concludes that as a result of T.B.'s action in withholding R.C. from school from November, 1992 through January, 1993, he suffered substantial neglect.
Alaska Statute 47.10.010(a)(2)(F) provides for jurisdiction over a child who is in need of aid as a result of "the child having suffered substantial physical abuse or neglect as a result of conditions created by the child's parent, guardian, or custodian." (Emphasis added).
Our review of the evidence persuades us that support for an adjudication of R.C. as a child in need of aid under AS 47.10.010(a)(2)(F) is lacking. T.B. claims that she withdrew R.C. from school soon after he was assaulted at a school bus stop. This assault followed an assault the previous spring which caused serious injuries to R.C.[3]
During R.C.'s absence from school, T.B. attempted to enroll him in a home schooling program. When her application for home schooling was denied, she re-enrolled R.C. in school. While T.B. should have attempted to enroll R.C. in the home schooling program before withdrawing him from school, her actions do not constitute "substantial physical neglect."
In Matter of S.D., Jr., 549 P.2d 1190, 1197-98 (Alaska 1976), we held that parents show neglect or a lack of proper care when they *275 keep their children from attending school for an extended period of time without "some justifiable reason." Here T.B.'s concern for her son's health and safety constitutes a justifiable reason, especially given the history of assaults committed against him.[4]
Therefore, we hold that the superior court erred in adjudicating R.C. a child in need of aid under the provisions of AS 47.10.010(a)(2)(F).

3. Did the superior court err in concluding that R.C. is a child in need of aid pursuant to AS 47.10.010(a)(2)(A)?

Alaska Statute 47.10.010(a)(2)(A) provides for jurisdiction over a child who is in need of aid as a result of "the child being habitually absent from home or refusing to accept available care, or having no parent, guardian, custodian, or relative caring or willing to provide care. ..." (Emphasis added).
In its Memorandum of Decision the superior court determined that it "must give full faith and credit to the ORDER TERMINATING THE PARENT CHILD RELATIONSHIP, issued in the Matter of R.C.... by the District Court of the State of Colorado. .. . According to that order, T.B.'s personal right to R.C. was terminated, and R.C.'s legal custody and guardianship was granted to R.C. and F.C. [the minor's maternal grandparents]." Custody was later transferred to the minor's uncle, G.C.[5] The superior court additionally found that "R.C. has no parent, guardian, custodian or relative caring or willing to provide care" and determined that R.C. is a child in need of aid pursuant to AS 47.10.010(a)(2)(A).
On appeal, T.B. claims that the superior court erred in holding that she was not R.C.'s custodian during the relevant times. She argues that the powers of attorney executed by G.C. appointed her custodian of R.C. The State advances two reasons for upholding the superior court.
First, the State argues that, under CINA Rule 2(b), G.C. had no authority to appoint T.B. as a custodian. Rule 2(b) states:
"Custodian" means a person over 18 years of age to whom a parent has transferred temporary physical care, custody, and control of the child for the period of time immediately preceding the conduct alleged in the petition.
(Emphasis added). Accordingly, the State claims that, since G.C. was merely R.C.'s guardian and not his parent, he had no authority to appoint T.B. as a custodian. We view the State's argument as exceedingly technical. Common sense dictates that a legal guardian who has all the authority of a parent may do what a parent may do, so if a parent may appoint a custodian, a guardian may also appoint one.[6]
Additionally, it is not clear that CINA Rule 2(b) provides the definition of "custodian" for purposes of AS 47.10.010(a)(2)(A), since Chapter 10 of Title 47 provides no definition of "custodian." See AS 47.10.990. Furthermore, AS 13.26.020 states:
A parent or guardian of a minor or incapacitated person, by a properly executed power of attorney, may delegate to another person, for a period not exceeding one year, any powers regarding care, custody, or property of the minor child or ward, except the power to consent to marriage or adoption of a minor ward.
We believe that the provisions of AS 13.26.020 are relevant and controlling in interpreting *276 AS 47.10.010(a)(2)(A). In short, G.C. had authority, pursuant to AS 13.26.020, to appoint a custodian for R.C.
The State also argues that G.C. lacked authority to appoint T.B. as R.C.'s custodian for an indefinite period of time. This is because AS 13.26.020, quoted above, permits custodians to be appointed for only one year. Accordingly, under G.C.'s December 18, 1990 power of attorney appointing T.B. as a custodian, T.B.'s appointment expired in December 1991, approximately one and one-half years before the State took emergency custody of R.C. Technically speaking, then, R.C. had no custodian after December 1991 willing to assume care for him after the State took custody.[7]
T.B., however, persuasively argues that her role as R.C.'s care taker for two and one-half years should be taken into account, and that she qualifies as R.C.'s custodian on that basis. Specifically, she claims:
T.B.'s care for R.C. for approximately two and a half years under the power of attorneys and guardianship documents certainly qualifies her at the very least as a custodian.
There is merit in T.B.'s argument. T.B. exercised actual care of and had sole custody of R.C. for a period of approximately two and one-half years immediately prior to the May 18, 1993 incident which culminated in the State's taking emergency custody of R.C. Considering this fact, we think it just and appropriate to characterize T.B. as a custodian willing to provide care for R.C. Given our conclusion that T.B. functioned as R.C.'s de facto custodian, we hold that the superior court erred in adjudicating R.C. a child in need of aid under the provisions of AS 47.10.010(a)(2)(A).[8]

V. CONCLUSION

The superior court's judgment that R.C. is a child in need of aid under AS 47.10.010(a)(2)(A), (C), and (F) is REVERSED and VACATED. Additionally, the superior court's judgment granting custody of R.C. to the State for a period of two years is REVERSED and VACATED.[9]
NOTES
[1] There is some indication that R.C. attempted to strike the person who was on the motorcycle.
[2] AS 47.10.010 provides in part:

(a) Proceedings relating to a minor under 18 years of age residing or found in the state are governed by this chapter, except as otherwise provided in this chapter, when the court finds the minor
...
(2) to be a child in need of aid as a result of
(A) the child being habitually absent from home or refusing to accept available care, or having no parent, guardian, custodian, or relative caring or willing to provide care ...;
...
(C) the child having suffered substantial physical harm or if there is an imminent and substantial risk that the child will suffer such harm as a result of the actions done by or conditions created by the child's parent, guardian, or custodian or the failure of the parent, guardian, or custodian adequately to supervise the child;
...
(F) the child having suffered substantial physical abuse or neglect as a result of conditions created by the child's parent, guardian, or custodian.
[3] The State claims that the school investigated the bus stop incident, and determined that no assault took place. The superior court did not make a finding as to whether this assault took place, but rather stated, "According to T.B. she removed R.C. from school because of assaultive behavior directed at him by peers."
[4] In Matter of S.D., Jr., we referred to AS 14.30.010, which requires parents and guardians to "maintain the child in attendance at a public school...." AS 14.30.010 also lists circumstances pursuant to which a child will be excused from attending a public school. It might be inferred that in Matter of S.D., Jr., we intended to limit "justifiable reason[s]" to the exceptions listed in AS 14.30.010. Matter of S.D., Jr. should not be interpreted in such a manner. Circumstances might arise, such as those in the case at bar, where an absence from school is not justified by the exceptions noted in AS 14.30.010, but which nevertheless do not warrant characterizing the minor as a child in need of aid.
[5] The superior court further found that

[t]he powers of attorney executed by G.C. have no legal significance as to T.B.'s status as R.C.'s mother or guardian. G.C. lacked the legal capacity to make either designation.
[6] No restrictions regarding R.C.'s uncle's guardianship have been brought to our attention.
[7] A State social worker testified that she was not aware of any other relatives who are willing to care for R.C. However, the Guardian Ad Litem's report filed in conjunction with the dispositional phase of the proceedings notes that R.C.'s grandmother is willing to care for R.C. The superior court did not note this discrepancy in its findings, but rather stated that R.C. had no "parent, guardian, custodian, or relative caring or willing to provide care." Since R.C.'s grandmother is apparently willing to care for R.C., the superior court erred in deciding that R.C. is a child in need of aid under AS 47.10.010(a)(2)(A). However, as explained below, we conclude that T.B. also qualified to care for R.C. under AS 47.10.010(a)(2)(A).
[8] Aside from the isolated incident of May 18, 1993, where T.B. threatened R.C. and T.B.'s decision to withdraw R.C. from school, which for reasons discussed previously do not furnish independent grounds for adjudicating R.C. a child in need of aid, the State has not produced evidence of any other incidents which point to T.B.'s failing to properly care for R.C. That T.B. is willing to care for R.C. is undisputed.

We note that our holding makes it unnecessary to address whether T.B. might also qualify as a "relative" within the terms of AS 47.10.010(a)(2)(A).
[9] In this appeal the State has not argued that returning R.C. to the custody of T.B. would violate principles of full faith and credit given the Colorado court's judgment terminating T.B.'s parental rights.

Though the superior court accorded full faith and credit to the Colorado judgment severing T.B.'s parental rights, the superior court recognized T.B. as a "party to this proceeding by order made in open court on October 14, 1993." Additionally, the superior court mentioned in its findings of fact that the "DFYS developed a case plan, the object of which was to return R.C. to family custody." Thus, it seems likely that, had T.B. completed the program to the satisfaction of the State, it would not have attempted to have R.C. adjudicated as a child in need of aid.
T.B. never asked the superior court to revoke the Colorado court's severance of her parental rights, as she had perhaps the right to do. In Rita T. v. State, 623 P.2d 344, 347 (Alaska 1981), we said:
We conclude that as long as a child remains the ward of the court, under AS 47.10.080(f) his or her natural parents are entitled to a review of the order terminating their parental rights....
See also AS 47.10.080(f).
Since the matter of the restoration of T.B.'s parental rights was not raised below and not briefed in this appeal, we decline to address this complex issue which necessarily involves issues of full faith and credit.