962 P.2d 173 (1998)
In the Matter of J.A., A Minor Under the Age of Eighteen (18) Years. DOB: 02-26-88.
No. S-8454.
Supreme Court of Alaska.
August 7, 1998.
*174 Jo-Ann M. Chung, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for State of Alaska.
Margi A. Mock, Assistant Public Defender, and Barbara K. Brink, Public Defender, Anchorage, for Mother.
Thom F. Janidlo, Law Office of Thom F. Janidlo, Anchorage, for Father.
Barbara L. Malchik, Deputy Public Advocate, Marshall Currey Cook, Assistant Public Advocate, and Brant G. McGee, Public Advocate, Anchorage, Guardian Ad Litem.
Before MATTHEWS, C.J., and COMPTON, EASTAUGH, FABE and BRYNER, JJ.

OPINION
FABE, Justice.

I. INTRODUCTION

In this case, we must decide whether the State presented enough evidence to establish probable cause that J.A., a nine-year-old passenger in a drunk driving accident, was in imminent and substantial risk of physical harm. This was not an isolated instance of drunk driving for J.A.'s father, the driver of the car; he has a history of four prior reckless and drunk driving convictions, including two since 1992. Moreover, J.A.'s parents have longstanding substance abuse problems, and their pattern of domestic violence had driven the mother from the home on the day of the accident. Because a probable cause determination must be made in light of the totality of the circumstances, we conclude that the trial judge erred in failing to find probable cause that J.A. was in need of aid.

II. FACTS AND PROCEEDINGS

Joseph and Eliza A. have three children. J.A., the youngest, is nine years old and an Indian child within the meaning of the federal Indian Child Welfare Act (ICWA), 25 U.S.C. § 1901 et seq. On October 18, 1997, Joseph backed his car into a neighbor's vehicle while attempting to leave the parking lot of his housing complex. J.A. was a passenger in the car. After failing a field sobriety *175 test, Joseph was arrested for Driving While Intoxicated (DWI) and taken into custody. J.A. was taken into emergency custody because there was no adult available to care for him.
On the following day, the Department of Health and Social Services filed a Child in Need of Aid (CINA) petition for temporary custody and adjudication. The petition was later amended to include allegations of a family history of domestic violence and substance abuse. A superior court master held a preliminary hearing. Based upon Joseph's and Eliza's stipulations, the master found probable cause to believe that J.A. was a child in need of aid and placed him in temporary state custody.
A second hearing was held before the superior court in December 1997. Attorneys for Joseph, Eliza, and the State were present, as were the guardian ad litem and a representative from the Native Village of Tununak. Joseph and Eliza sought to withdraw their stipulations as to probable cause. The superior court allowed the withdrawal and placed the burden of establishing probable cause on the State. After hearing testimony, Superior Court Judge Sen Tan ruled that although probable cause existed at the time of the accident, "it did not continue once [the father] was released and [the parents] were ready to assume custody of [J.A.]." The superior court then dismissed the petition and ordered J.A. returned to the custody of his parents. The State appeals.

III. STANDARD OF REVIEW

Whether probable cause exists is a mixed question of law and fact. See Saucier v. State, 869 P.2d 483, 484 (Alaska App.1994). Absent clear error, this court will accept the factual findings of the lower court. See id. "Whether probable cause arises from those facts, however, is a purely legal question" that this court reviews de novo. Id.; accord Chandler v. State, 830 P.2d 789, 792 (Alaska App.1992); State v. Grier, 791 P.2d 627, 631 (Alaska App.1990).
Although the dissenting justices urge us to review the superior court's probable cause decision under the deferential "clearly erroneous" standard, we are persuaded that de novo review is the proper standard to be applied to a probable cause determination in a CINA case, just as it is in a case involving criminal law.
The question of what standard of review should be applied to probable cause determinations in cases involving warrantless searches was examined in depth by the United States Supreme Court in Ornelas v. United States, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). There, Chief Justice Rehnquist, writing for the eight-member majority, concluded that once the historical facts are established, "the rule of law is undisputed" and the issue becomes whether those facts satisfy the applicable statutory or constitutional standard. Id. at 696, 116 S.Ct. 1657 (quoting Pullman-Standard v. Swint, 456 U.S. 273, 289 n. 19, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982)). The Court reasoned that to allow a policy of deferential review would permit different judges to draw different conclusions as to whether the facts are sufficient to constitute probable cause. "This, if a matter-of-course, would be unacceptable." Id. at 697, 116 S.Ct. 1657. The Court further observed that because the legal rules for probable cause acquire meaning only through their application to the specific facts of a given case, "[i]ndependent review is therefore necessary if appellate courts are to maintain control of, and to clarify the legal principles." Id. (citation omitted).[1] These policy reasons for requiring de novo review of a probable cause determination in a criminal case are also applicable to the CINA context.
Furthermore, giving deference to the trial court's factual findings but reviewing its legal determination of probable cause under a de novo standard is consistent with our approach in recent CINA decisions. For example, in R.J.M. v. State, 946 P.2d 855, 861 (Alaska 1997), we stated that we would apply *176 the clearly erroneous standard to the trial court's factual findings, but "in determining whether the trial court's findings comport with the requirements of the CINA statutes and rules, we deal with questions of law, and so apply the de novo standard of review." See also R.R. v. State, 919 P.2d 754, 755 n. 1 (1996). We therefore apply the de novo standard of review to Judge Tan's probable cause decision and exercise our independent judgment.

IV. DISCUSSION

A. Definition of Probable Cause in a CINA Case

Within forty-eight hours after the State has filed a petition alleging that a child is in need of aid, the superior court must conduct a temporary custody hearing. See AS 47.10.142(d); CINA Rule 10(a)(1). The court is charged with determining whether, at the time of the hearing, probable cause exists to believe that the child is a child in need of aid as defined in the statute. See AS 47.10.142(d).[2] The trial court must make its probable cause findings in light of the totality of the circumstances. See, e.g., Van Sandt v. Brown, 944 P.2d 449, 452 (Alaska 1997) (citing Illinois v. Gates, 462 U.S. 213, 231-32, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)); Lord v. Wilcox, 813 P.2d 656, 659 (Alaska 1991).
In CINA proceedings, probable cause is established where reasonably trustworthy information would justify a prudent person's belief that the child is in need of aid. Cf. Lord, 813 P.2d at 658 (defining probable cause to arrest); State, Dep't of Fish & Game v. Meyer, 906 P.2d 1365, 1376-77 (Alaska 1995) (defining probable cause necessary to trigger a hearing under anti-discrimination statute); Matanuska Elec. Ass'n v. Weissler, 723 P.2d 600, 608 (Alaska 1986) (defining probable cause in context of tree trespass statute). Probable cause requires only "a fair probability or substantial chance" that the child is in need of aid. Van Sandt, 944 P.2d at 452 (citations and quotation omitted).[3] This standard is distinguishable from the test to be applied at a CINA adjudication trial; there, the State has the burden of proving by a preponderance of the evidence that a child is in need of aid. See CINA Rule 15(c).[4]
*177 Although the dissenting justices argue that we should define probable cause in a CINA case as "more likely than not," a probable cause standard that rises to the preponderance of the evidence test is not necessary to protect against unwarranted interference with parental custody. The existence of probable cause at the temporary custody hearing does not itself justify the child's removal from the home; it merely allows the petition to proceed toward adjudication and gives the court authority to consider the issue of placement. Before placing (or allowing continued placement of) any child in state custody, a judge who finds probable cause of CINA status must expressly find that placement in the home would be contrary to the child's welfare and that the State has made reasonable efforts to prevent removal. See CINA Rule 10(c)(3)(A) & (4)(A). In the case of an Indian child, the standards for removal are even more stringent. See CINA Rule 10(c)(3)(B) & (4)(B). Thus, the pre-adjudication placement requirements guard against unwarranted interference with parental custody.
With the probable cause determination decoupled from the issue of pre-adjudication placement, the need for an early screening function to protect parental rights must be balanced against the very real need to protect children against parental harm. Forbidding state intervention without positive proof of CINA status would certainly protect the individual rights of parents; but at the same time it would likely discourage the State from intervening in cases of abuse or neglect until a child actually suffered serious injury.
Such a rigid standard seems overprotective of parental rights. Indeed, the dissent's proposed interpretation of the probable cause requirement would provide greater protection for parents of CINA children than defendants facing criminal charges are afforded. When the State prosecutes a misdemeanor charge without seeking an arrest warrant or pretrial detention, it is free to proceed to trial with no preliminary showing of probable cause at all. And even for the most serious felonies, the State need only present its evidence to the grand jury, which applies a standard of review no more stringent than the probable cause standard proposed by the dissenting justices for CINA cases, but does so in an ex parte setting that is far more forgiving than the adversary probable cause hearing required under the CINA rules. The dissent's reading of the probable cause requirement would thus make it more difficult for the State to prosecute to adjudication a CINA petition involving a child who remains in parental custody pending adjudication than to prosecute to conviction a serious felony charge involving a defendant who remains incarcerated prior to trial.

B. Evidence Supporting a Finding of Probable Cause

While the drunk driving accident that precipitated the State's involvement in this case was a major focus of the temporary custody hearing, the State also presented evidence of Joseph's and Eliza's histories of substance abuse, domestic violence, and DWI convictions. This evidence was integral to an evaluation of whether probable cause existed to believe that J.A. faced an imminent risk of substantial physical harm. As we recognized in In re D.D.S., 869 P.2d 160, 163 (Alaska 1994), the State has a "strong interest in protecting and preserving the well-being of the children of this state," and the "trial court should have access to all pertinent evidence relating to ... abuse or neglect in determining the best interests of the child."
A social worker, Aneida Alexander, testified that the Department already had two open reports of harm regarding the A. family when the DWI accident occurred; two other reports had been substantiated when the family lived in Bethel. The most recent report of harm arose from a September 1997 domestic violence assault. Alexander informed the judge that Joseph had been convicted of assaulting Eliza on August 29, 1997, and the police testified that they had responded to at least six domestic disturbance *178 calls at the A. home, most of which involved alcohol. Eliza was convicted in July 1997 for violating a domestic violence order and again in October 1997 for disconnecting the telephone to prevent Joseph from calling the police for assistance during another domestic dispute. During the weekend of the drunk driving accident, Eliza left the home, apparently due to domestic violence.
The trial court also learned from Alexander that both Joseph and Eliza had alcohol problems. Although Eliza had completed in-patient treatment, she was drinking on the day before the accident. Another social worker, Gary Ward, believed that Eliza was intoxicated in the daytime when he tried to interview her. Joseph admitted to drinking vodka and orange juice before being arrested for DWI. Joseph also admitted that he had been convicted of DWI on three prior occasions; another DWI charge was reduced to Reckless Driving.
Both the guardian ad litem and the ICWA representative from the Native Village of Tununak took the position that J.A. was a child in need of aid and that the parents should be required to participate in a treatment plan. After hearing this evidence, the superior court recognized that there were problems with substance abuse, domestic violence, and repeated drunk driving in the A. family. It concluded, however, that "those problems" did not provide "the necessary nexus" to demonstrate that J.A. was at imminent and substantial risk of physical harm under AS 47.10.010(c)(3). We disagree.
The record establishes probable cause to believe that Joseph placed J.A. at direct risk of harm. Joseph was arrested for DWI as a result of the accident on October 18, 1997, and it is undisputed that J.A. was a passenger in the car at the time. Although, as the dissent observes, Joseph had not been convicted of the DWI charge at the time of the temporary custody hearing, there was certainly probable cause to believe that he drove while intoxicated.
We have previously discussed the profound danger that can arise when an individual operates a motor vehicle under the influence of an intoxicant. See State, Dep't of Pub. Safety v. Conley, 754 P.2d 232, 233-36 (Alaska 1988); State v. Dunlop, 721 P.2d 604, 610 (Alaska 1986). A car that is out of control "even on a relatively deserted street, poses a significant threat to property or individuals in proximity to the vehicle." Ebona v. State, 577 P.2d 698, 701 (Alaska 1978).
While an isolated instance of DWI may not, in itself, constitute probable cause that a child passenger is in need of aid, the October 18, 1997 drunk driving accident was not an isolated incident in Joseph's driving career. The trial court had before it a driving record establishing Joseph's substantial history of DWI and reckless driving offenses. The October 18, 1997 incident was his fifth offense and his third since 1992.
The record also reveals that both parents had enduring substance abuse problems as well as a history of domestic violence that had resulted in police intervention, the entry of a restraining order, and criminal charges. While the dissent argues that there is no evidence that J.A.'s parents have ever "placed their children in physical danger," the violence that has transpired between Joseph and Eliza signifies an independent and significant risk of physical harm to J.A.
In Borchgrevink v. Borchgrevink, 941 P.2d 132, 140 (Alaska 1997), we recognized the devastating impact that witnessing domestic violence can have on children. The violent behavior of Joseph and Eliza need not have been directed at J.A. to place him in physical danger. As another court has acknowledged, "[m]any violent acts could be committed in the child's presence, but not directed toward the child, in such a manner as to actually endanger the child's physical well-being." Lane v. Jefferson County Child Welfare Unit, 564 S.W.2d 130, 132 (Tex.Civ.App. 1978).
Accordingly, the narrow risk that Joseph might once again drink and drive with J.A. in his car is not a realistic measure of J.A.'s exposure to continuing physical danger. Rather, the totality of the State's evidence tended to show that J.A., only nine years old, lived in a chaotic home where everyday life was dominated by his parents' longstanding alcohol abuse and domestic violence. As a result, J.A. stood in constant jeopardy of *179 physical harm, either from his parents' actions or from their failure to provide adequate supervision. See AS 47.10.010(a)(3).
At the temporary custody hearing, the trial court's task was not to determine whether the State had proved its case by a preponderance of the evidence. Nor could its finding of probable cause resolve the separate question of whether J.A. should be returned to his home with supervision by the Department. See CINA Rule 10(c)(3)(B). The court was required only to decide whether, in light of all of the circumstances, there was a "fair probability or substantial chance" that J.A. was a child in need of aid. We conclude that under the facts of this case, a sufficient nexus existed between the parents' conduct and the potential risk to J.A.'s continued physical well-being. Based on the totality of the circumstances, we conclude that at the time of the hearing, probable cause existed to believe that J.A. was a child in need of aid.

V. CONCLUSION

The superior court's dismissal of the petition is REVERSED and this matter is REMANDED for further proceedings pursuant to CINA Rule 10(c)(2)-(4), to determine whether to place J.A. in temporary custody of the Department or to allow him to remain in his home with supervision by the Department.
COMPTON, J., with whom MATTHEWS, C.J., joins, dissenting.
MATTHEWS, C.J., with whom COMPTON, J., joins, dissenting.
COMPTON, Justice, with whom MATTHEWS, Chief Justice, joins, dissenting.
Today's opinion takes an unprecedented leap forward in permitting the State to unreasonably interfere in the lives of its citizens. The court holds for the first time that, as a matter of law, when parents have a prior record of irresponsible conduct not involving their children, an isolated incident in which they place their child in danger satisfies the probable cause standard necessary for the State to petition for temporary custody of the child under our Child in Need of Aid statute. Since I cannot agree with this approach, I dissent.

The Standard
To find J.A. to be a Child in Need of Aid the State was required to show that there was probable cause to believe that, at the time of the hearing, J.A. was at an "imminent and substantial risk [of physical harm] as a result of the actions done by or conditions created by [J.A.'s] parent." AS 47.10.010(a)(3). No other grounds were alleged to support a finding that J.A. was a Child in Need of Aid. Webster's New World Dictionary defines "imminent" as "likely to happen without delay; impending." Webster's New World Dictionary, 702 (second college edition, 1979).

The Court's Findings
The court bases its conclusion that there was, as a matter of law,[1] probable cause to believe J.A. to be in imminent and substantial risk of physical harm as a result of his parents' actions on the following findings:
(1) "Joseph placed J.A. at direct risk of harm. Joseph was arrested for DWI as a result of the accident on October 18, 1997, and it is undisputed that J.A. was a passenger in the car at the time." Op. at 178.
It has yet to be shown that Joseph was, in fact, DWI on the date in question. Let us assume, however, that there was probable cause to so believe. J.A. was not, in fact, harmed. Absent harm to J.A., the State's burden was to show probable cause to believe that J.A. faced an imminent, substantial risk of harm if returned to his parents' custody. See AS 47.10.010(a)(3). Probable cause to believe that Joseph was intoxicated while driving with J.A. in the car, negligent though such an act may have been, does not amount to probable cause to believe that Joseph *180 would again immediately place his son in substantial physical danger.
(2) "[T]he ... drunk driving accident was not an isolated incident." Op. at 178.
The court refers to Joseph's three DWI convictions and one reckless driving conviction spaced over a period of twenty years, two of which occurred long before J.A. was born. There is no indication that Joseph had a child present with him in the vehicle on any of these occasions. Joseph's past offenses do not establish probable cause to believe that he would immediately place J.A. in substantial physical danger.
(3) "The record also reveals that both parents had enduring substance abuse problems as well as a history of domestic violence." Op. at 178.
Those portions of the record referred to by the court reveal that the parents had difficulty in controlling their teenage daughter; that the parents consumed alcohol which has, on occasion, resulted in disturbances; and that there had been previous problems with domestic violence involving the parents. Notably lacking is any evidence that the parents have previously physically abused their children or placed their children in physical danger. The court also can point to no evidence in the record supporting its assertion that "J.A. stood in constant jeopardy of physical harm ... from his parents' ... failure to provide adequate supervision." Op. at 179. The court's conclusion, that as a matter of law there is probable cause to believe that J.A. is in imminent, substantial danger of physical harm if returned to the custody of his parents, is utterly baseless.
The court provides two citations in an attempt to justify its conclusion that domestic violence, not involving the children, requires, as a matter of law, a finding of probable cause to believe that J.A. was in imminent, substantial danger of substantial physical harm. But neither of these cases, on closer inspection, stands for this proposition.
The court states that "[i]n Borchgrevink v. Borchgrevink, 941 P.2d 132, 140 (Alaska 1997), we recognized the devastating impact that witnessing domestic violence can have on children." Op. at 178. This is accurate, but a non sequitur. Witnessing domestic violence may, indeed, have a devastating emotional and psychological impact on children, but this does not meet the requirements of the instant casethat J.A. be at an imminent, substantial risk of physical harm.
The court quotes, out of context, Lane v. Jefferson County Child Welfare Unit, 564 S.W.2d 130, 132 (Tex.Civ.App.1978) for the proposition that " `[m]any violent acts could be committed in the child's presence, but not directed toward the child, in such a manner as to actually endanger the child's physical well-being.'" Op. at 178. It is true that on facts such as those in Lane one might conclude that acts of domestic violence, not directed at the child, endanger the child's physical well-being: The husband in Lane beat and raped his pregnant wife; almost hit his child in the process of tearing apart the mother's place; and threw bricks or rocks through the windows of the mother's home, shattering glass in all directions, when the husband knew that the child was present in the home. Each of these actions clearly endangered the physical safety of the child at issue in Lane. Apart from the isolated possible DWI which precipitated the instant case, there is no evidence that Joseph's actions have even indirectly endangered the physical safety of J.A. in a like manner.
While the record reveals that the parents have led troubled lives, it does not require, as a matter of law, a finding that there was probable cause to believe that J.A. faced an imminent, substantial risk of physical harm if he was returned to his parents' custody.

Conclusion
I conclude that the trial court was well within its discretion to find a lack of probable cause to believe that J.A. would face an imminent, substantial risk of physical harm if returned to the custody of his parents. The court may view J.A.'s world as an unpleasant one, but unpleasantness alone cannot justify taking a child from his parents.
MATTHEWS, Chief Justice, with whom COMPTON, Justice, joins dissenting.

Introduction
On Saturday evening, October 18, 1997, Joseph's nine-year-old son, J.A., asked Joseph *181 to drive him to a convenience store for a snack. Joseph had been drinking, but he agreed. As Joseph backed out of his parking space he struck a parked car. Joseph was arrested for DWI. Since no one else was at home, J.A. was taken into state custody. Although Joseph was released on his own recognizance an hour after he was arrested, the State kept J.A. in foster care for seven weeks. On December 11, 1997, Superior Court Judge Tan ordered J.A. released to his parents. This order was not consented to by the State, which never receded from its position that J.A. was "at imminent risk of substantial harm if returned to the home now."
Does the October 18 incident justify the State's attempt to take J.A. from the family home? As today's opinion correctly points out, more is involved than simply an isolated probable DWI. Joseph has had five such offensesincluding that of October 18spread over a twenty-six-year period. Further, there have been instances of domestic violence between Joseph and his wife Eliza, J.A.'s mother. Moreover, Eliza also has a drinking problem. These are the facts favoring the State. On the other hand, the evidence indicates that Joseph retired from military service with the rank of major, that he has been employed by the same employer for the past twenty-six years, and that he and Eliza have been married for twenty-five years. It appears to be undisputed that J.A. is a good student with a regular school attendance record. There is no indication that he has ever been inappropriately disciplined. Nor is there evidence that he has ever been harmed by action or inaction of either parent. Finally, there is no evidence, except for the evening of October 18, that Joseph has ever driven while intoxicated with J.A. in the car.
On this record, Judge Tan concluded that probable cause did not exist to believe that J.A. was at imminent risk of substantial physical harm as of the December hearing. And on this record the court concludes de novo that Judge Tan erred and that probable cause exists to believe that J.A. is at imminent risk of substantial physical harm.
I agree with Justice Compton's strong dissent. I write separately because I think that the court has made two errors of law which go a long way toward explaining our different conclusions.
The legal errors of which I speak are:
First, the court has construed the probable cause standard of AS 47.10.142(d) to mean minimally that there is a "substantial chance" that J.A. is a child in need of aid. In my view, probable cause under this section requires a conclusion which is more likely true than not true based on the quantum of information available.
Second, the court treats probable cause as a legal determination which is reviewed without deference to the determination of the trial judge, rather than as a question of the application of a legal standard to a particular set of facts which is reviewed deferentially and cannot be reversed unless found to be clearly erroneous.
I turn to a fuller explanation of these points.

Probable Cause
In civil law when we speak of probability we mean "more likely than not." See Kenneth S. Broun et al., McCormick on Evidence § 339, at 437-41 (John William Strong ed., 4th ed.1992). Thus I would have thought that probable cause as used in AS 47.10.142(d) is equivalent to the customary civil preponderance-of-the-evidence standard, which requires the trier of fact to find that something is more likely than not true. See Alaska Pattern Jury Instruction § 2.22 (defining preponderance of the evidence). But drawing on criminal search and seizure law under the Fourth Amendment to the United States Constitution, today's opinion says that probable cause only requires "a substantial chance" that something is true. Op. at 176. The "substantial chance" standard is inherently vague and may be quite a bit lower than the "more likely than not" standard. For example, if the holder of a lottery ticket were told that he had a ten-percent chance of winning, that would be both exciting news and a substantial chance. But it would not be probable that the holder would win.
I have no quarrel with the view that probable cause is established where reasonably trustworthy information is brought forth *182 which would justify a prudent person's belief that a child is in need of aid. See Op. at 176. Such a standard is consistent with what I regard as the plain language of probable cause. To say something is probable simply means that it more likely than not will occur. It seems clear that a prudent person would not choose to believe a proposition unless information shows that it is probably true, or more likely than not true. By contrast, the "substantial chance" standard may indicate a likelihood far lower than more likely than not. This formulation, in my view, is in practical usage indistinguishable from reasonable suspicion and, as such, is wholly insufficient to justify placing a child in the custody of the state.[1] This is true even where the order specifies that the child shall be returned to the home under state supervision.
"Probable cause" in criminal law with respect to decisions made by the police to search or seize, and with respect to decisions made by a magistrate to issue a warrant, may in limited circumstances mean something less than "more likely than not." We recognized this possibility in McGee v. State:
It has been said that in a search and seizure context probable cause does not mean "more likely than not" or "by a preponderance of the evidence," rather, the words connote something more akin to "reasonable cause."
....
... Where there is probable cause that a crime has been committed and also probable cause that a particular person committed it, we think a lesser degree of probability will suffice to justify temporary seizure of a weapon to determine if it was involved in the crime.
614 P.2d 800, 806 (Alaska 1980) (citations omitted).
Professor LaFave, the leading commentator in this area of law, states that it is still an open question as to whether the Supreme Court of the United States will permit the probable cause standard to fall below a more probable than not test. See Wayne R. LaFave, Search and Seizure § 3.2(e), at 60-63 (3d ed.1996). Nonetheless, Professor LaFave suggests that there are some circumstances in which searches or seizures should be upheld as satisfying probable cause even though they do not meet a more probable than not test. See id. at 65-82.[2]
*183 I disagree that the criminal law analogies relied on by the court, relating to the protections afforded defendants facing criminal charges, are apt or accurate. Op. at 177. A preliminary showing of probable cause is not required for a misdemeanor charge without an arrest warrant or pretrial detention because there has been no seizure of the person. Such a seizure only takes place after conviction, thus after the defendant's guilt has been proven beyond a reasonable doubt. Similarly, the standard for a grand jury indictment is whether the evidence, "if unexplained or uncontradicted, would warrant a conviction of the defendant." Alaska R.Crim. P. 6(q). Since a conviction is not warranted unless proved beyond a reasonable doubt, the grand jury and reviewing courts must ask whether the evidence presented, if uncontradicted, would justify conviction under the reasonable doubt standard. This standard is much more demanding than mere probable cause.
The court points out that a grand jury hearing is held in an ex parte setting and is therefore more forgiving than a preliminary CINA hearing. Op. at 177. But a hearing on temporary placement under AS 47.10.142(d) is severely circumscribed. The hearing must take place within forty-eight hours after the court is notified that a minor has been taken into custody. See CINA Rule 10(a)(1). At this point, the parents will not ordinarily be prepared to present their case. The CINA rules anticipate this by providing that the court must advise the parents of their rights and responsibilities at the beginning of the hearing, including the right to counsel. See CINA Rule 10(a)(1), (2). Further, CINA Rule 10(a)(4) permits the court to consider hearsay evidence. If the grand jury analogy were applied to the preliminary CINA hearing, I suggest that we would ask whether the facts presented, including hearsay evidence, would suffice, if uncontradicted or unexplained, to warrant a finding that the child is a child in need of aid.[3] As such a finding must be made by a preponderance of the evidence, this would meet the plain meaning of probable cause.
I suggest, however, that it is not to the criminal law that we should look for analogies as to the standard of proof required under section .142(d). More to the point are civil authorities discussing the standard of proof which is required before constitutionally protected rights can be interfered with.
For example, to obtain a prejudgment attachment or prejudgment seizure of personal property the plaintiff must "establish by a preponderance of the evidence the probable validity of the plaintiff's claim for relief in the action and the absence of any reasonable probability that a successful defense can be asserted by the defendant." Alaska R. Civ. P. 89(d); see also Alaska R. Civ. P. 88(d). Thus, a plaintiff seeking to seize the property of another before a final determination must show that he probably will win. Due process compels this result. See Etheredge v. Bradley, 502 P.2d 146, 151 (Alaska 1972) ("[D]ue process requires some form of notice and hearing to establish the probable validity of the plaintiff's underlying claim before the defendant can be temporarily deprived of a property interest that `cannot be characterized as de minimus.'") (quoting Fuentes v. Shevin, 407 U.S. 67, 90 n. 21, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) and Sniadach v. Family Fin. Corp., 395 U.S. 337, 342, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) (Harlan, J., concurring)). Cf. Care & Protection of Robert, 408 Mass. 52, 556 N.E.2d 993, 1001 n. 7 (1990) (observing that the preponderance standard required for review of emergency removal of child is "analogous to the hearing accorded a request for a preliminary injunction" in which the "task for the motion judge is to balance the risk of irreparable harm to the plaintiff and the defendant `in light of [each] party's chance of success on the merits' " because both hearings serve "essentially the same function") (citations omitted).
*184 Due process also protects family integrity. See In re K.L.J., 813 P.2d 276, 279 (Alaska 1991) ("The right to the care, custody, companionship, and control of one's children `undeniably warrants deference and, absent a powerful countervailing interest, protection.'") (quoting Lassiter v. Department of Soc. Servs., 452 U.S. 18, 27, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981)); see also Smith v. Organization of Foster Families for Equal. & Reform, 431 U.S. 816, 844, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977); Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); Duchesne v. Sugarman, 566 F.2d 817, 825 (2d Cir.1977); Flores v. Flores, 598 P.2d 893, 895 (Alaska 1979). Due process requires that a clear and convincing evidence standard be satisfied before parental rights may be terminated. See Santosky v. Kramer, 455 U.S. 745, 769, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). We have held that the State may not deny a parent all visitation rights to a child except on a showing of clear and convincing evidence. See D.H. v. State, 723 P.2d 1274, 1277 (Alaska 1986); K.T.E. v. State, 689 P.2d 472, 478 (Alaska 1984). Where parental visitation rights are restricted but not terminated, only a preponderance-of-the-evidence standard is required. See In re A.B., 791 P.2d 615, 618 n. 3 (Alaska 1990). In A.B., we cited with approval a commentary that we summarized as follows: "[C]lear and convincing evidence is necessary to sustain a decision completely ending visitation for any appreciable length of time, but [the] preponderance of evidence standard applies when visitation is merely restricted." Id. (citing M. Garrison, Why Terminate Parental Rights?, 35 Stan. L.Rev. 423, 486-87 & n. 284 (1983)).
A temporary commitment to the Department of Health and Social Services under AS 47.10.142 can last for a substantial period of time before it is again subject to court review. Under subsection (h) court review might not take place for as long as eighteen months after the commitment. CINA Rule 10(d) shortens this period to ninety days. But this is still a long period to deprive a parent of the parent's constitutionally recognized custodial rights.
The court points out that before a non-Indian child can be removed from the home, CINA Rule 10 requires the court to find that continued placement in the home is "contrary to the welfare of the child." CINA Rule 10(c)(3)(A); Op. at 177. Assuming that this finding must be made by a preponderance of the evidence, this may mitigate state abuses. However, the welfare-of-the-child standard must be examined in light of the statutory scheme governing these proceedings. Prior to CINA Rule 10, AS 47.10.142(e) allowed the court to order the minor committed to the department for temporary placement outside the home for as long as eighteen months, upon a finding of only probable cause. As a matter of statutory construction, one must ask whether the legislature intended that such a placement could occur upon a finding that there was merely a substantial chance that the child was a child in need of aid.
Further, the welfare-of-the-child standard will not, in all cases, be an adequate substitute for a finding that the child is probably a child in need of aid. A pervasive problem in children's cases is that often parent-substitutes better provide for a child's welfare than biological parents. The effect of the court's opinion which waters down the probable cause standard is that a child may now be removed when the diluted standard is met and a better placement can be found.
I suggest that as a matter of statutory construction it is incorrect to hold that our legislature contemplated that a parent could be deprived of custodial rights for a period as long as eighteen months on a standard of proof which is lower than more probable than not. After all, a full CINA determination made under AS 47.10.080 is subject to annual review. See AS 47.10.080(f). And it is established that the standard of proof required for a full CINA hearing is the preponderance-of-the-evidence standard. See CINA Rule 15(c).
Further, as a constitutional matter, I suggest that it would be violative of due process principles to deprive a parent of custodial rights for a period as long as ninety days, except on a showing that the child is a child in need of aid based on a standard of proof equivalent to the preponderance-of-the-evidence *185 standard. Since a preponderance standard is required merely to restrict the visitation rights of a parent who has already been deprived of custody, see A.B., 791 P.2d at 618 n. 3, it follows that a standard at least as demanding is necessary to deprive a parent of custody for an appreciable period of time. Supportive of this conclusion is Opinion of the Justices to the Senate, 427 Mass. 1201, 691 N.E.2d 911, 916 (1998), in which the Massachusetts Supreme Court stated that "the preponderance standard was sufficient for purposes of restricting a parent's right to custody, in part, because `further proceedings regarding the particular situation [would] be held'" (quoting Care & Protection of Robert, 556 N.E.2d at 999). See also In re Yuma County Juvenile Action Nos. J-90-283, J-90-284, 168 Ariz. 497, 815 P.2d 424, 425-26 (App.1991) (holding that standard of proof at hearing to review taking of temporary state custody is preponderance of evidence); In re Juvenile Appeal (83-CD), 189 Conn.276, 455 A.2d 1313, 1322-25 (1983) (concluding that due process requires state to prove by preponderance of evidence that temporary placement should continue); Maureen S. v. Margaret S. 184 A.D.2d 159, 592 N.Y.S.2d 55, 58 (N.Y.App.Div.1992) (noting that temporary emergency custody to protect child from potential sexual abuse must be supported by preponderance of evidence that child is at risk of emotional and physical harm); Wright v. Arlington County Dep't of Soc. Servs., 9 Va.App. 411, 388 S.E.2d 477, 477-79 (1990) (concluding that, under due process analysis, preponderance standard applies to temporary child protection placements that may last up to sixteen months); see also Conn. Gen.Stat. Ann. § 45a-607(b), (d) (West 1998) (requiring trial court to review immediate temporary custody order using preponderance standard); Ky. Rev.Stat. Ann. § 620.080(b)(2) (Michie 1998) (requiring department to prove "reasonable grounds" in support of temporary removal of child by "preponderance of evidence"); Va. Code Ann. § 16.1-253(A), (F), as amended by 1998 Va. Acts ch. 550 (Michie 1998) (requiring allegations of abuse or neglect at preliminary-protective-order hearing to be proved by preponderance of evidence).
Moreover, I think that this conclusion applies to cases where the state becomes temporary custodian of a child who is permitted to remain at home. In such cases it is the State and not the parents who are charged with the authority and responsibility to supervise the child and provide for his "care and treatment." AS 47.10.142(e). This is not a "de minimus" interference with constitutionally protected custodial rights. Due process requires that "probable validity" be demonstrated in such cases more urgently than it does when, for example, a bank account is frozen. See Etheredge, 502 P.2d at 154-55.

Standard of Review
The State has not argued in this case that a de novo standard should be used. Instead, it has acknowledged that the clearly erroneous standard applies. See Appellant's Brief, at 11, 21. Nonetheless, today's opinion treats the question whether probable cause exists based on the undisputed facts in this case as a legal question which is subject to de novo review. The opinion relies on cases which review whether police officers making searches or arrests had probable cause for their actions. Op. at 175-176. In such cases, de novo review is appropriate. But where a magistrate has issued a search warrant, deferential rather than de novo review of the probable cause determination is called for. See State v. Jones, 706 P.2d 317, 323 (Alaska 1985) (explaining that "a magistrate's initial determination of probable cause is given considerable deference") (citing Johnson v. State, 617 P.2d 1117, 1122 (Alaska 1980) (noting that "the decision of the judicial officer who has issued the warrant is to be given `great deference'") (citation omitted)); Lockwood v. State, 591 P.2d 969, 970-71 (Alaska 1979) (same)).[4]
*186 The court relies on Ornelas v. United States, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996), which imposed a de novo standard of review for probable cause determinations when police officers conduct warrantless searches. Ornelas, however, recognized that this standard diverged from the less searching review accorded to determinations of probable cause made by magistrates. Id. at 698-99, 116 S.Ct. 1657. The Court said that a two-tiered approach to the standard of review would yield an "incentive" for police officers to conduct searches pursuant to a warrant. Id. at 699, 116 S.Ct. 1657. No such concerns are implicated here.
And, although I see no reason why the trial judge's determination of probable cause should be treated differently from a magistrate's determination, this is not a criminal law case. I suggest that we should use the same standard of review here that we use to review the application of other legal standards to particular facts. Where the facts are undisputed, the application of a legal standard to a particular set of facts presents a legal question. See, e.g., Foss Alaska Line, Inc. v. Northland Servs., Inc., 724 P.2d 523, 526 (Alaska 1986). Nonetheless, for practical reasons we generally treat such questions as issues for the trier of fact. See, e.g., Taranto v. North Slope Borough, 909 P.2d 354, 359 (Alaska 1996) (noting that, in scope-of-employment inquiry, "even where the facts are undisputed, when `conflicting inferences can be drawn from undisputed facts' the question is properly left to the jury") (citation omitted); 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2528 (2d ed. 1995) ("Even if the facts are undisputed, the case must go to the jury if conflicting inferences may be drawn from the evidence presented at trial."); id. § 2587 (explaining that deference is owed to the trial court even when its findings rest "on an inference drawn from undisputed facts").
Whether the legal standard is reasonable care; scope of employment; or one of the elements of a child-in-need-of-aid determination such as imminent risk of substantial harm, the standard of review is deferential: the trial court's determination will not be reversed unless it is clearly erroneous. See, e.g., T.B. v. State, 922 P.2d 271, 273 (Alaska 1996) ("A superior court's finding that a child is in need of aid will be overturned if this court is left with a definite and firm conviction that a mistake has been made. Factual findings supporting the superior court's determination that a minor is a child in need of aid are reviewed under the clearly erroneous standard.") (citations omitted); K.N. v. State, 856 P.2d 468, 475 (Alaska 1993) ("The findings of the superior court in CINA cases will not be overturned unless this court, after reviewing the entire record, is left with a definite and firm conviction that a mistake has been made.") (citation omitted).
At the adjudication stage in CINA proceedings, the question whether by a preponderance of the evidence a child is at imminent risk of harm is reserved to the trier of fact and is not subject to de novo review at the appellate level. See T.B., 922 P.2d at 273; K.N., 856 P.2d at 475. As noted, the determination as to whether there is probable cause to believe that a minor is a child in need of aid under AS 47.10.142(d) has the potential to deprive a parent of custodial rights for as long as ninety days. Since this deprivation is different only in degree from the deprivation a parent suffers before the next mandated hearing when a CINA determination is made under AS 47.10.080, I can think of no reason not to apply the same standard of review to section .142(d) determinations. The questions are identical from the trial court's point of view. In both cases, the trial court must ask whether it is more likely than not that the child is at imminent risk. No reason exists for an appellate court to apply an intrusive standard when reviewing the preliminary hearing determination, while applying a deferential standard to the same determination made at the final hearing.

Conclusion
I believe that as a matter of statutory construction and constitutional law, no standard *187 of proof less demanding than the more likely than not standard can be used in a CINA determination under AS 47.10.142(d). Further, I think that to conclude that the standard of review of a trial court's determination under section .142(d) is de novo rather than clearly erroneous misapplies the more applicable criminal law analogy and ignores the most analogous standard prevailing in civil law.
Judge Tan's decision concludes that J.A. is not in imminent danger of substantial physical harm. In reviewing this conclusion, the court should ask whether it is clearly erroneous. I suspect that if the majority agreed that the applicable standard of proof were more likely than not, and the applicable standard of review were clearly erroneous, this case would be decided differently.
NOTES
[1] Policies of providing guidance on legal principles, unifying precedent, and "stabiliz[ing] the law" were also persuasive to the Supreme Court in its decision to mandate de novo review by federal courts of state-court "in custody" determinations in federal habeas corpus proceedings. Thompson v. Keohane, 516 U.S. 99, 115, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995).
[2] Our legislature's decision to require only a finding of probable cause at the temporary custody hearing is consistent with that of many jurisdictions. See, e.g., Fla. Stat. Ann. § 39.402(4)(b) (West 1998); 705 Ill. Comp. Stat. 405/2-10(1) & (2) (West 1992 & Supp 1997); Mich. Ct. Rule 5.965(B)(9) & (10) (West 1998); N.M. Stat. Ann. § 32A-4-18(A) & (C) (Michie 1995); S.C.Code Ann. § 20-7-610(M) (West 1976 & Supp.1997); Tenn.Code Ann. §§ 37-1-114(a), 37-1-117(c) (1996); Wis. Stat. Ann. §§ 48.205, 48.21(4) (West 1997); see also Haw.Rev.Stat. § 587-41(a) (1993) (requiring finding of reasonable cause); Wash. Rev.Code Ann. § 13.34.060(8) (West 1998) (reasonable cause); N.C. Gen.Stat. § 7A-574(a) & (b) (Michie 1995) (reasonable factual basis). Although the dissent has relied on cases from Arizona, Connecticut, and Massachusetts that establish preponderance of the evidence as the proper standard for a temporary custody hearing, the statutory schemes in place at the time those cases were decided designated no standard of proof for that hearing. The dissent also finds support in a New York case, but it involves a child custody dispute between parents. The Virginia decision cited by the dissent discusses the standard of proof necessary for an adjudication trial rather than a temporary custody hearing.
[3] The United States Supreme Court articulated this test for probable cause in Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), concluding that probable cause demands only a "fair probability" or "substantial chance of criminal activity, not an actual showing of such activity." Id. at 238, 244 n. 13, 103 S.Ct. 2317. Although the dissenting opinion of Chief Justice Matthews characterizes this test as "diluted" and "indistinguishable from reasonable suspicion," as the Supreme Court has recognized, the test for reasonable suspicion is "obviously less demanding than that for probable cause." United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (citing United States v. Montoya de Hernandez, 473 U.S. 531, 541, 544, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985)). Reasonable suspicion requires only that the officer have "`some minimal level of objective justification' for making the stop," id. (quoting INS v. Delgado, 466 U.S. 210, 217, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984)) and "be able to articulate something more than an `inchoate and unparticularized suspicion or hunch.'" Id. (quoting Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).
[4] By the date of the adjudication trial, the State has had an opportunity to conduct a full investigation, review discovery of all relevant documents, including hospital and school records of the child, and interview all potential witnesses. By contrast, little information may be available at the time of the temporary custody hearing, which must be held within forty-eight hours after the State has taken emergency custody of the child.
[1] Reaching a conclusion "as a matter of law" means that the court denies the possibility that there is room for a reasonable difference of opinion, based on the facts in the record and inferences which can be drawn from the facts, as to the correctness of the conclusion. See Saslow v. Rexford, 395 P.2d 36, 41 & n. 8 (Alaska 1964).
[1] In Care & Protection of Robert, 408 Mass. 52, 556 N.E.2d 993, 995-1002 (1990), the court rejected a "reasonable cause" standard for review of the emergency removal of a child, noting that the phrase implies merely a "suspicion" that the child is in need of care. Id. at 998. Alarmed at the "relatively low degree of accuracy" of such a standard, the Massachusetts court held that due process required the application of a preponderance-of-the-evidence standard, especially where a temporary placement could last up to one year. Id. at 997 n. 5, 998, 1000.

Today's opinion observes that the Supreme Court has said that the test for reasonable suspicion is "`obviously less demanding than that for probable cause.'" Op. at 176, n. 3 (quoting United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989)). I agree that the two standards should be clearly distinguishable, and have two observations about the statement quoted from Sokolow. First, the statement does not repeat the "substantial chance" language which I find objectionable. Second, the statement in context with the sentence which immediately precedes it implies an equivalency between "probable cause" and proof "by a preponderance of the evidence" in contrast to "reasonable suspicion." The two sentences read
[Reasonable] suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence. We have held that probable cause means "a fair probability that contraband or evidence of crime will be found," Illinois v. Gates, [462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527] (1983), and the level of suspicion required for a Terry stop is obviously less demanding than that for probable cause....
Sokolow, 490 U.S. at 7, 109 S.Ct. 1581.
[2] Professor LaFave states:

If the function of arrest were merely to produce persons in court for purposes of their prosecution, then a more-probable-than-not test would have considerable appeal. But there is also an investigative function which is served by the making of arrests. If a lawful custodial arrest is made, the police are then entitled to make a full search of the arrestee, which might produce critical evidence of the crime of which the arrestee is suspected. As the Code draftsmen correctly note, an arrest will also make possible identification procedures, and a particular case may well reach the point where such procedures are called for though the more-probable-than-not test could not be met and charging the suspect would not be called for. The same may be said of other investigative techniques, such as interrogation.
And it is precisely because arrest serves an investigative function that "[t]he quantum of evidence necessary to sustain an arrest is not, in all circumstances, the same quantum necessary to make out probable cause for charging a person with the crime."
Wayne R. LaFave, Search and Seizure § 3.2(e), at 65-66 (3d ed.1996) (footnotes omitted).
[3] This would be appropriate in any case where only the State presented proof or where, as here, the underlying facts are not contested.
[4] Under current Fourth Amendment law, a warrant will not be invalidated so long as there is a substantial basis for the magistrate's decision that probable cause exists. See Illinois v. Gates, 462 U.S. 213, 238-39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Professor LaFave observes that

[w]hile this "substantial basis" review is more deferential than de novo review (the standard for review of probable cause in non-warrant cases), it is "less deferential than clearly erroneous review" (the standard of review used in other areas of law to review the application of a legal standard to a particular set of facts).
LaFave, supra, § 3.1(c), at 16.