In the Matter of D. C., A Minor Under the Age of 18 Years.

In the Matter of E. C., A Minor Under the Age of 18 Years.

No. 3840.

Supreme Court of Alaska.

June 15, 1979.

Joseph W. Murray, Anchorage, for appellant.

Elizabeth Page Kennedy, Asst. Atty. Gen., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

## OPINION

PER CURIAM.

We are called upon here to determine whether the superior court's order terminating the parental rights of the mother of E.C. and D.C. was supported by clear and convincing evidence, as required by AS 47.-10.080(c)(3).[1] We conclude that it was so supported, and affirm.

The state presented testimony from, *inter alia*, three of the mother's social workers, two school nurses where D.C. attended kindergarten, a pediatrician who examined both children, a foster parent who had cared for both children, a psychiatric social worker who had worked with D.C. and interviewed the mother, and a family therapist who had counseled the mother and her new husband. This testimony established three incidents of beatings causing extensive bruising of the children, and indicated a general pattern of child abuse.[2] The fam-

---

1. AS 47.10.080(c)(3) reads:
   (c) If the court finds that the minor is a child in need of aid, it shall
   
   .    .    .    .    .
   
   (3) by order, upon a showing in the adjudication by clear and convincing evidence that there is a child in need of aid under § 10(a)(2) of this chapter as a result of parental conduct and upon a showing in the disposition by clear and convincing evidence that the parental conduct is likely to continue to exist if there is no termination of parental rights, terminate parental rights and responsibilities of one or both parents and commit the child

to the department or to a legally appointed guardian of the person of the child, and the department or guardian shall report annually to the court on efforts being made to find a permanent placement for the child.

2. In September 1976, D.C. appeared at school extensively bruised, and told the school nurse that her stepfather had spanked her with a belt. In October, she came to school with a black eye and a badly bruised back; she told the nurse that her mother had hit her in the eye and her stepfather had beaten her with a belt on the

ily therapist felt that the home was "potentially life threatening" to the children. The testimony also showed that the children's home situation was causing major psychological problems, and that they had developed a great fear of their parents, especially their stepfather. Several witnesses also testified that the mother and stepfather found these beatings to be an acceptable form of discipline, and that there had been no change in their attitudes toward this harsh discipline, even after the children had been removed from the home as a result.

The mother admitted to spanking the children, even to the point of bruising,[3] but felt that such punishment was necessary, since she claimed the children had not responded to other forms of discipline. She has argued on appeal that her actions fell within the discretion allotted a parent in the administration of punishment. However, this discretion is not unlimited. Clearly it does not extend to punishment regularly causing the "substantial physical harm" which under AS 47.10.010(a)(2)(C)[4] determines that a child is in need of aid.

While a parent has a right to the care, custody and control of his or her children, this right is not absolute, and "courts have become increasingly aware of the rights of children." *In the Matter of S.D., Jr.,* 549 P.2d 1190, 1201 (Alaska 1976). The Alaska legislature has struck a balance between these potentially competing rights by requiring the state to prove its allegations by clear and convincing evidence in parental rights termination cases. Once this burden of proof has been met, however, the statute mandates a termination. Our review of the record here has convinced us that the mother's conduct, and the stepfather's conduct acquiesced in by the mother, have resulted in substantial physical harm to E.C. and D.C., and that there would be an imminent and substantial risk of its continuation if her parental rights were not terminated.

AFFIRMED.

---

back, because she had been "scribbling on a dresser." In February 1977, a pediatrician who examined E.C. at the request of the mother's social workers found bruises all over him, which he concluded were the probable result of child abuse, and not an accident with the refrigerator door, as the mother and stepfather claimed.

3. They denied responsibility for some of the more extreme injuries suffered by the children. Their explanations, however, were inconsistent with credible evidence offered by the state.

4. AS 47.10.010(a)(2)(C) reads, in relevant part:

*Jurisdiction.* (a) Proceedings relating to a minor under 18 years of age residing or found in the state are governed by this chapter, except as otherwise provided in this chapter, when the court finds the minor . . .

(2) to be a child in need of aid as a result of . . .

(C) the child having suffered substantial physical harm or if there is an imminent and substantial risk that the child will suffer such harm as a result of the actions done by or conditions created by his parent, guardian or custodian or the failure of his parent, guardian or custodian adequately to supervise him[.]