NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| KIMBERLY J., ) | |
| ) | Supreme Court No. S-18040 |
| Appellant, ) | |
| ) | Superior Court No. 3PA-20-00017 CN |
| v. ) | |
| ) | MEMORANDUM OPINION |
| STATE OF ALASKA, DEPARTMENT ) | AND JUDGMENT* |
| OF HEALTH & SOCIAL SERVICES, ) | |
| OFFICE OF CHILDREN'S SERVICES, ) | No. 1869 – January 5, 2022 |
| ) | |
| Appellee. ) | |
| ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, John C. Cagle, Judge.

Appearances: Renee McFarland, Assistant Public Defender, and Samantha Cherot, Public Defender, Anchorage, for Appellant. Anna Jay, Assistant Attorney General, Anchorage, and Treg Taylor, Attorney General, Juneau, for Appellee. Rachel Levitt, Assistant Public Advocate, and James Stinson, Public Advocate, Anchorage, for Guardian Ad Litem.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

---

* Entered under Alaska Appellate Rule 214.

# I.    INTRODUCTION

The superior court terminated Kimberly J.'s[1] parental rights after determining that termination was in the best interests of her child. Kimberly appeals, arguing that because she had a plan for her own mother to adopt the child, the court should have expressly considered her parental right to direct her child's permanent placement as a factor in its best interests analysis. Because Kimberly did not raise this argument to the superior court and there was no plain error, we affirm the superior court's termination order.

# II.    FACTS AND PROCEEDINGS

Kimberly has struggled with substance abuse for many years. Her daughter, Tiffany, was born in January 2020 and tested positive for opiates at birth. Tiffany suffered withdrawal symptoms and spent several weeks in a neonatal care unit to be weaned off of her addiction.

Even before Tiffany's birth, Kimberly recognized that her substance abuse would impair her ability to care for Tiffany. Kimberly therefore never intended to take Tiffany home from the hospital; Kimberly planned to have her mother Charlene take Tiffany and eventually adopt her.[2] Charlene had already adopted three of Kimberly's older children. Kimberly also had a fourth child who, after Office of Children's Services (OCS) involvement, was adopted by a licensed foster family, the Ellerys.

---

[1]    We use pseudonyms to protect the parties' privacy.

[2]    In the superior court's order granting adjudication, it found "truthful" Kimberly's testimony that she "never had an intent to take T[iffany] home from the hospital, recognizing her substance dependence."

Charlene petitioned to adopt Tiffany shortly after Tiffany's birth. Five days later OCS petitioned to take custody of Tiffany and declare her a child in need of aid.[3] The superior court held Charlene's adoption petition in abeyance to allow the child in need of aid (CINA) proceeding to move forward, though the court expressed openness to lifting that hold depending on future placement hearings.

The court held a probable cause and removal hearing in February 2020. The court found probable cause to believe that Tiffany was a child in need of aid under AS 47.10.011(6) (physical harm), (9) (neglect), and (10) (parental substance abuse) and that removal was proper.

The court then held a contested placement review hearing. Both Charlene and the Ellerys had requested placement not long after Tiffany's birth. Like Charlene, the Ellerys were considered a "family member" placement because they were the adoptive parents of Tiffany's half-sibling.[4] OCS had declined to place Tiffany with Charlene because at that time, Charlene herself was facing an OCS investigation as well as criminal charges. Charlene requested a review of OCS's placement denial. After the contested hearing the court affirmed OCS's decision to place Tiffany with the Ellerys. Kimberly did not seek our review of the court's placement decision. Charlene's OCS investigation was ultimately closed without consequence, and her criminal charges were eventually dropped.

Kimberly's caseworker created a case plan, which included treatment for her addiction, trauma counseling, medical appointments, and support groups. OCS made

___

[3] OCS's petition was signed on the same day that Charlene filed her petition, but filed five days later.

[4] AS 47.14.100(e) (listing placement preference for "an adult family member"); AS 47.10.990(1)(B) (defining "adult family member" as including "the child's sibling's legal guardian or parent").

repeated efforts to contact and assist Kimberly. Yet Kimberly made no progress with her case plan. She did not attend any of the appointments or services that OCS had scheduled.

OCS also set up visitation for Kimberly and Charlene to see Tiffany. But from February 2020 until the termination trial in March 2021, Kimberly visited Tiffany only once. Charlene did not visit Tiffany for nearly a year.

At a contested adjudication hearing in November 2020, Kimberly conceded that, despite OCS's reasonable efforts, her substance abuse was ongoing and untreated. But Kimberly disputed that Tiffany was a child in need of aid. Kimberly argued that because she had planned for Charlene to adopt Tiffany, there were adequate arrangements for Tiffany's care. Kimberly thus asserted that Tiffany was not in need of aid and that the court should "allow [Kimberly] to return to her original plan of placement and adoption by [Charlene]." OCS reiterated that Kimberly had failed to make adequate arrangements for Tiffany. Because OCS had properly denied placement with Charlene in light of the OCS and criminal investigations against her, OCS believed Charlene was not an adequate arrangement.

The superior court authorized OCS custody. Tiffany was a child in need of aid despite Kimberly's adoption plan, the court explained, because OCS had concerns about Charlene as Tiffany's placement. The court also expressed concern that Kimberly's plan was not sufficiently protective because Kimberly could take Tiffany back from Charlene at any time before the adoption was finalized. And the court explained that OCS was allowed to initiate CINA proceedings even if Charlene had filed for adoption. Kimberly did not appeal this adjudication determination.

OCS filed a petition to terminate Kimberly's parental rights, and a trial was held in March 2021. At trial a caseworker testified that she believed placement with the Ellerys was in Tiffany's best interests. Tiffany was living and bonding with her half-

brother, who had been adopted by the Ellerys. Tiffany was also bonding with the Ellerys and looked to them for her needs.[5]

At the end of the trial, counsel for both Kimberly and OCS made closing arguments. Kimberly's lawyer reiterated that Kimberly had an adoption plan and, because of that plan, Tiffany was not a child in need of aid. She concluded that termination was "not necessary" and that the trial court should allow Kimberly to "follow through with the adoption that she had originally planned." OCS and the guardian ad litem focused their closing arguments on asserting that Tiffany was a child in need of aid.

The superior court terminated Kimberly's parental rights. In its termination order, the court found that Tiffany was a child in need of aid under AS 47.10.011(6) (physical harm) because Tiffany was born with opiates in her system and thus had already suffered physical harm. The court also found that Tiffany would be at substantial risk of future harm if Tiffany were returned to Kimberly. And the court found that Tiffany was a child in need of aid under AS 47.10.011(10) (substance abuse) because Tiffany had been exposed to drugs in utero.

The court also responded to Kimberly's argument that removing Tiffany was unnecessary because of Kimberly's adoption plan with Charlene. The court explained that it had previously decided that removal was proper because of OCS's concerns about Charlene. The court further found that Kimberly had failed to remedy the conduct that placed Tiffany in need of aid and that OCS had made reasonable efforts to reunify Tiffany with Kimberly.

---

[5]     A second OCS caseworker also testified. She largely echoed the first caseworker's observations that Tiffany was doing well with the Ellerys and that it would not be in Tiffany's best interests to wait for Kimberly to remedy the safety concerns that had led to Tiffany's removal.

Finally, the court determined that termination was in Tiffany's best interests. The court found that Tiffany had specific needs like occupational therapy, that Kimberly could not meet those needs, and that Tiffany could not be safely returned to Kimberly without "significant further intervention." It found that Tiffany had not bonded with Kimberly or Charlene because neither had visited her. And the court found that Tiffany was placed with her sibling and his adoptive parents, who could become a permanent placement for Tiffany.

Kimberly now appeals the termination decision.

## III.   STANDARD OF REVIEW

In CINA cases we review issues not raised at trial for plain error.[6] Plain error exists if "an obvious mistake has been made which creates a high likelihood that injustice has resulted."[7]

## IV.   DISCUSSION

On appeal Kimberly challenges the superior court's best interests determination. She contends that the court should have expressly considered whether terminating her right to direct Tiffany's permanent placement was in Tiffany's best interests. In other words, Kimberly asks us to adopt a mandatory best interests factor: whether denying the parent the right to choose where the child is placed — and allowing OCS to make that choice instead — is in the child's best interests.

---

[6]     *Kyle S. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 309 P.3d 1262, 1267 (Alaska 2013); *see also Lucy J. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 244 P.3d 1099, 1111 (Alaska 2010).

[7]     *Kyle S.*, 309 P.3d at 1267 (quoting *Lucy J.*, 244 P.3d at 1118).

An argument that is raised for the first time on appeal is waived.[8] Kimberly acknowledges that she never raised this argument before the superior court. But she argues that we should hear her argument because it is "closely related" to her arguments at trial and could be "gleaned from the pleadings."[9] We disagree.

Although Kimberly did assert before the superior court that she had an adoption plan in place, she did so to argue that her child was not in need of aid.[10] She did not, however, challenge the superior court's best interests analysis on this ground. The two different arguments require the superior court to make different findings. To determine whether a child is in need of aid the court must assess the child's safety in a specific context. The superior court had to determine whether Kimberly's adoption plan would have kept Tiffany safe (and the court found it would not have done so). To determine what weight to give the parent's right to decide placement in its best interests analysis, the court would have to examine, for example, how well the mother knows the child and whether she has sound judgment such that her placement decision, rather than OCS's decision, would be best for the child. The court would then have to balance those considerations against others relevant to the child's best interests.[11]

---

[8]     *Hymes v. DeRamus*, 222 P.3d 874, 889 (Alaska 2010).

[9]     *Zeman v. Lufthansa German Airlines*, 699 P.2d 1274, 1280 (Alaska 1985).

[10]     For instance, Kimberly contended in her closing argument that because she "ha[d] a valid plan of adoption . . . the [c]ourt should find that [Tiffany] is not a child in need of aid on that basis."

[11]     *See Hannah B. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 289 P.3d 924, 932-33 (Alaska 2012) ("[A] superior court may consider 'any fact relating to the best interests of the child' in its best-interests analysis," such as "the children's bond to their caregivers." (quoting *Doe v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 272 P.3d 1014, 1023 (Alaska 2012))).

Kimberly's argument at trial was that Tiffany was "not a child in need of aid." Kimberly never once mentioned "best interests" during her closing argument. She never asked the court to make the factual findings necessary to assess whether it would be in Tiffany's best interests for Kimberly to direct Tiffany's placement. Nor was it enough for Kimberly to generally assert that termination was "not necessary"; that assertion did not alert the superior court that it should make the specific best interests findings that Kimberly now seeks on appeal. Because Kimberly's best interests argument on appeal is not "closely related" and cannot be gleaned from her arguments at trial, her argument is waived.[12]

We nevertheless review issues not raised at trial for plain error.[13] In a civil case, plain error exists if "an obvious mistake has been made which creates a high likelihood that injustice has resulted."[14]

The superior court in this case made no "obvious mistake." First, our precedent clearly establishes that a superior court has broad discretion to craft its best

---

[12] *Zeman*, 699 P.2d at 1280.

[13] *Kyle S. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 309 P.3d 1262, 1267 (Alaska 2013).

[14] *Id.* (quoting *Lucy J. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 244 P.3d 1099, 1118 (Alaska 2010)). Kimberly argues that when considering "whether it was plain error not to apply a yet-to-be-announced constitutional rule, the court must consider not whether the failure to apply the unannounced rule was obvious, but whether the error was so prejudicial to the fairness of the proceedings that failure to correct it would perpetuate manifest injustice." For support she cites our decision in *Charles v. State*, a criminal case. 326 P.3d 978, 987 (Alaska 2014). We need not decide whether the test from that case applies in the CINA context because, as explained below, Kimberly fails to show the degree of injustice required under either test.

interests analysis. The superior court may determine which factors to consider,[15] what weight to assign any given factor,[16] and what factors to articulate in its findings.[17] A superior court is not required to consider any particular best interests factor — not even those that are statutorily enumerated.[18] Kimberly's proposal, which would create a mandatory best interests factor, is directly contrary to that rule. A trial court does not make an obvious mistake when it follows well-established precedent.

Second, Kimberly fails to explain why a parent's right to direct a child's placement is more relevant to a child's best interests than any other factor and therefore must always be considered. A parent's right to direct permanent placement is just one of many important parental rights at stake in a termination proceeding.[19] And parents' constitutional rights to raise their children are protected by the other elements applicable to a termination of parental rights proceeding: the requirement to show that the child was

---

[15] *Chloe W. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 336 P.3d 1258, 1271 (Alaska 2014) (discussing "the trial court's discretion in determining which factors to consider in its best interests analysis").

[16] *Doe*, 272 P.3d at 1025 ("[T]here is no requirement that superior courts 'accord a particular weight to any given factor.' " (quoting *Barbara P. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 234 P.3d 1245, 1263 (Alaska 2010))).

[17] *Joy B. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 382 P.3d 1154, 1167 (Alaska 2016) (holding that a court need not "expressly cite [statutory factors]" in its best interests finding).

[18] AS 47.10.088(b); *Joy B.*, 382 P.3d at 1167 (explaining that the statute "does not create a duty" to consider any of the enumerated factors).

[19] *See, e.g.*, *Kiva O. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 408 P.3d 1181, 1186-87 (Alaska 2018) (discussing parents' right to direct child's medical care); *State v. Planned Parenthood of Alaska*, 171 P.3d 577, 583 (Alaska 2007) (discussing parents' right to "instill in their children . . . 'religious beliefs' " (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 233 (1972))).

in need of aid; OCS's duty to make efforts to reunite the family; the need for OCS to prove these elements by the demanding "clear and convincing evidence" standard; and a parent's right to be represented by counsel at public expense.[20]   Only if these protections are provided and these findings are made does the question of whether terminating parental rights is in the child's best interests become dispositive.  But when the court does consider that question, its focus must be on what is best for the child.

Kimberly argues that the right to direct placement is categorically unique because if the parent has "exercise[d] her right to place her child permanently in another home before the state is made aware of behavior by the parent" that would make the child in need of aid, "the state lacks the authority to pursue a petition against the parent," as the parent has already severed parental rights and the child is no longer in danger. That argument explains why, in such circumstances, a child may not actually be in need of aid, which was Kimberly's argument to the superior court.  But it does not explain why, if the child *is* found in need of aid because the chosen placement is not safe and the parent has not yet actually severed rights to the child, the parent's right to choose a placement for the child should be given special consideration in deciding what is best for the child.[21]

---

[20]     *See* AS 47.10.088(a) (describing requirements for termination of parental rights); CINA Rule 12(b) (describing right to appointed counsel); *In re D.C.*, 596 P.2d 22, 23 (Alaska 1979) (explaining that legislature acknowledged parent's "right to the care, custody and control of his or her children" by "requiring the state to prove its allegations by clear and convincing evidence in parental rights termination cases"); *In re K.L.J.*, 813 P.2d 276, 279, 283-86 (Alaska 1991) (holding that because "right to direct the upbringing of one's child 'is one of the most basic of all civil liberties,' " indigent parent whose parental rights were at stake had right to appointed counsel (quoting *Flores v. Flores*, 598 P.2d 893, 895 (Alaska 1979))).

[21]     Kimberly argues that requiring courts to consider the right to direct

(continued...)

Not only is there no obvious mistake, there is also no "high likelihood that injustice has resulted."[22] At trial Kimberly emphasized that she wished to place Tiffany with Charlene. But Charlene had not visited Tiffany at all during the year since removal. And Kimberly herself had visited Tiffany only once during that time. The superior court found that neither Kimberly nor Charlene had formed a bond with Tiffany. In contrast, Tiffany had a significant bond with her foster parents — a likely adoptive placement — as well as with her sibling who lived with them. In light of these facts, the likelihood of injustice arising from the trial court's best interests analysis appears low. Given the lack of visitation and bond, there is no indication that Kimberly had special insight in choosing a placement that would better serve Tiffany. And given the best interests factors that the superior court did weigh — including Tiffany's young age, a lack of a bond with Charlene and Kimberly, and Tiffany's strong bond with her foster family and her sibling in that family — there is little reason to believe that Kimberly's desire to have Tiffany live with Charlene, even if expressly considered, would have received decisive

---

[21]    (...continued)
placement would "protect[] indigent and marginalized parents from losing that right due to poverty or other hardship." But the focus of the best interests analysis is the individual child's best interests. The concerns Kimberly raises are addressed by other safeguards that contemplate those broader societal concerns. *See, e.g.*, AS 47.10.019 ("[T]he court may not find a minor to be a child in need of aid . . . solely on the basis that the child's family is poor . . . ."); AS 47.10.086(a) (requiring OCS to make reasonable efforts to provide family support services to parents and child designed to ensure reunification).

[22]    *Kyle S. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 309 P.3d 1262, 1267 (Alaska 2013) (quoting *Lucy J. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 244 P.3d 1099, 1118 (Alaska 2010)).

weight.[23]  Because we see no obvious mistake creating a high likelihood of injustice, no plain error exists.

## V.     CONCLUSION

We AFFIRM the superior court's decision to terminate Kimberly's parental rights.

---

[23]     We note, however, that Kimberly does not argue that the court must give decisive weight to the factor she proposes; she argues only that the court must expressly consider it.